Avery, Appellant, vs. Ryan and others, Respondents.

*September 30 — October 15, 1889.*

*(1) Specific performance of contract to transfer stock: Adequate legal remedy.    (2) Injunction: Reference to ascertain damages: Reversal of order prematurely made.*

1. Specific performance of a contract to transfer or deliver corporate stock whose value can be ascertained will not be enforced where there is no fiduciary relation between the parties and no claim that the defendants are insolvent, and where the plaintiff's legal rights can be enforced without resort to a foreign tribunal.

2. An order of reference to ascertain the damages sustained by reason of an injunction should not be made until it is finally decided that the plaintiff was not entitled to the injunction; but after it has been so decided the order of reference, though prematurely made, will not be reversed.

APPEALS from the Superior Court of *Milwaukee* County. There are two appeals in this action,— one from an order dissolving a preliminary injunction, and the other from an order sustaining several general demurrers to the amended complaint.    The pleadings herein, consisting of a complaint and an amended complaint, are quite voluminous.    The substance thereof, or of the portions material to the questions here determined, is as follows:

The original complaint avers (mostly upon information and belief) that the defendant corporation, the *Milwaukee City Railway Company*, owns and operates about thirty-six miles of street railway in the city of Milwaukee, and owns a large amount of real estate and personal property in connection therewith, and that the capital stock of such company is $750,000; that the defendant *McGeoch* is president and general manager of the corporation, and owns a majority of such capital stock, and that the defendant *Wheatcroft* is the secretary of the company; that in June, 1888, the plaintiff, with the permiss on and assent of the owners

thereof, undertook to sell such property for $1,400,000, subject to a mortgage of $15,000 on a portion thereof, and that the plaintiff was to get his commissions for making the sale out of the purchasers of the property; that in all the negotiations concerning the sale of the property the defendant *McGeoch* acted for said company and all interested therein, and assured the plaintiff from time to time that no sale thereof should be consummated to the defendant *Ryan* and his associates — the defendants *Fahnstock* — except upon a basis which would protect the plaintiff and assure him his commissions, upon which assurances the plaintiff relied at all times; that, immediately after obtaining permission to sell the property, plaintiff (who resides and has an office in Milwaukee) went to the city of New York and submitted to the defendant *Ryan* a proposition to sell him the property on the terms aforesaid, and *Ryan* agreed to purchase the same, in connection with such persons as he might associate with him, and to pay the plaintiff $100,000 for his commission on the sale; that a few days thereafter *Ryan* secured the defendants *William* and *Gibson Fahnstock* as his associates in the purchase, and thereafter acted for them as well as for himself in the negotiations for and purchase of the property; that at the request of *Ryan* plaintiff made two trips — one in June, and the other in July, 1888 — with *Ryan* to Milwaukee, at his own expense, to examine the property; that after a full examination thereof, and conference with the owners, *Ryan* applied to plaintiff to change the contract concerning commissions, and thereupon it was agreed between them that *Ryan* and his associates would purchase the property, but might negotiate therefor directly with the owners and purchase the same on the best terms they could obtain; that the purchasers would reorganize the corporation with a capital of $1,000,000 preferred, and $1,000,000 common, stock, and plaintiff should receive at par value $25,000 in

preferred, and $100,000 in common, stock, for his commissions; that on or about October 12, 1888, *Ryan* and the *Fahnstocks* purchased such property for about $1,250,000, and the transfer thereof is to be effected by a transfer to the purchasers of the capital stock of the *Milwaukee City Railway Company*, or by any other method necessary to complete the sale; that the purchasing defendants all reside in New York, and when the sale is consummated will remove the books and records of the company out of this state; that they design to organize a new company under the laws of some other state (but whether in accordance with their agreement with the plaintiff the latter does not know), which, if done, will leave plaintiff remediless, because they have no property within this state; that *McGeoch* has indemnified the purchasing defendants against the plaintiff's commissions on the sale, and has been aiding and abetting them to cheat and defraud plaintiff out of his said commissions; and, lastly, that the $25,000 preferred stock will be worth par when issued, and the $100,000 common stock will be worth $50,000, amounting to $75,000.

The demand for judgment is that the purchase and sale of the stock be carried on under the supervision of the court, and to that end that a receiver of such stock be appointed; that the purchasing defendants be required to organize a new corporation, pursuant to the aforesaid agreement, under the supervision of the court; and that a sufficient amount of the stock thereof to satisfy plaintiff's claim be placed in the hands of the receiver, for the plaintiff, and that all the defendants be enjoined from proceeding to consummate the sale and transfer of the property, except under the direction of the court.

Upon this complaint a preliminary injunction was granted by a court commissioner against all the defendants, in accordance with the demand of the complaint. A motion to dissolve such injunction was thereupon made by the selling

defendants, *McGeoch*, *Wheatcroft*, and the *Milwaukee City Railway Company*. It was heard on the complaint, the answer of *McGeoch* denying all the material allegations therein, his examination under sec. 4096, R. S., and several affidavits. It is not necessary further to state the contents of the papers used on such hearing. On November 19, 1888, the court granted the motion, and made an order dissolving the injunction as to the moving defendants, and appointing a referee, who was directed to ascertain and report the damages sustained by such defendants by reason of the injunction. The plaintiff appeals from such order.

In January, 1889, the plaintiff filed an amended complaint (which is a supplemental complaint as well) against the original, and eight additional, defendants, who were brought into the case. The amended complaint repeats, in substance, but with considerable elaboration, the averments of the original complaint. It emphasizes the charges of fraud and collusion between the defendants (including the new defendants) to cheat the plaintiff out of his commissions, and reasserts the value of the stock to which plaintiff is entitled to be $75,000. It alleges that a new corporation was formed at Milwaukee, November 30, 1888, by the purchasers, under the name of the *Milwaukee City Railroad Company*, which is one of the additional defendants, to which the property in controversy has been transferred, and that the defendants became and now are the owners of the stock of such company. It further alleges that the plaintiff is entitled to a lien for his commissions upon all the property thus sold to said purchasing defendants, and upon the stock of the new corporation. It fails to state whether such new corporation was organized in accordance with the terms of the agreement with the plaintiff or otherwise. The demand for judgment is of the same general character as in the original complaint, with such variations as were made necessary by the supplemental averments contained therein.

All the defendants except *Ryan* and the *Fahnstocks* interposed general demurrers to the amended complaint. The court sustained the demurrers, and from the order in that behalf the plaintiff appeals.

It is thought best to insert here the opinion of Judge NOYES sustaining the demurrers, omitting therefrom the merely narrative portions concerning the alleged contract for commissions. It is as follows:

"The only possible theory upon which this action can be maintained in equity, under the facts alleged, is that the plaintiff is entitled to a specific performance of his contract. What is the contract which the court is asked to decree shall be specifically performed? . . . The enforcement of this contract is the foundation of this suit. The court is asked to compel defendants *Ryan* and *Fahnstocks* to organize a corporation, the only terms of the charter or articles of which are specified being that the capital stock shall consist of $1,000,000 preferred, and $1,000,000 common, the shares to be of $100 par value, and, when so organized, to compel defendants to deliver to him $25,000 par value of preferred stock and $100,000 of common stock. The statute provides the essential provisions in the articles of association in order to form a corporation. Can the court specify what these shall be in the proposed company, in the absence of an agreement with respect thereto made by the parties? Can the court determine the character and terms of the preferred stock? Certainly preferred stock is not all alike, and how does the court know what the parties intended, or would be satisfied with, if drawn by the court? 'No rule is better established than is the rule that a court of equity will not decree specific performance of a contract unless the terms of the contract are clearly and definitely expressed. If the court is unable, from the contract itself, aided by authorized legal presumption, to arrive at a clear result of what all its essential terms are, the contract will not be specifically enforced.' *Schmeling v. Kriesel*, 45 Wis.

325, 327. 'A court of equity must interpret a contract between parties as it is made by them. It cannot make a contract for parties.' *Diamond State Iron Co. v. Todd* (Del.), 14 Atl. Rep. 27, 34.

"Were the stock actually in existence, instead of to be created, the question would be presented as to whether the action would lie in equity to compel a delivery thereof to the plaintiff. It seems to be now settled that a specific performance of a contract relating to personal property, including stocks, will in certain cases be enforced. The general rule is that it will not. It is only when the detention of chattels cannot adequately be redressed by damages that the jurisdiction of equity attaches. If there be any peculiar value to the personal property,— such as an heirloom, a painting, title-deeds, and the like,— or it be stock not purchasable in the market, or such that its value cannot be ascertained, or it have a special peculiar value in the future to the plaintiff, then courts of equity will decree specific performance, because an adequate compensation in damages cannot be ascertained or given at law. Pom. Spec. Perf. §§ 11–14; *Foll's Appeal*, 91 Pa. St. 434. So in cases where the plaintiff has put money or other property in the hands of the defendant, so as to create a fiduciary relation between them, or the defendant, in any proper sense, has made himself the trustee of the plaintiff, the jurisdiction in equity is enlarged, and performance of a contract relating to personal property will be decreed. *Johnson v. Brooks*, 93 N. Y. 337; Pom. Spec. Perf. § 14. But in all cases it is clear that when the plaintiff himself has put a value upon the property which he asks decreed to him, as in this case, an adequate compensation in the form of damages can be recovered in a legal action, and equity cannot be invoked. The plaintiff here has expressly fixed his damages at $75,000. Pom. Spec. Perf. 17, and cases cited.

"The facts alleged do not bring this case within any of

the recognized exceptions to the rule. The subject matter has not any peculiar value as an article of curiosity, antiquity, or affection; not one which the defendants alone can supply to enable the plaintiff to fulfil an engagement to a third person; not one of unknown or uncertain value, compensation for which cannot be given in money; not a subject of trust placed by the plaintiff in the hands of the defendants to be used or returned in a certain manner. The subject matter, on the other hand, is a broker's commission of $75,000, which the defendants *Ryan* and associates agreed to pay the plaintiff for services rendered. The remedy at law is clear, adequate, and its enforcement attended with no special doubt or difficulty, except as in many cases where process must be served and litigation had over a disputed claim.

" The right of a stockholder to compel the corporation to issue to him certain stock is conceded to be one enforceable in equity in proper cases. *Dousman v. Wisconsin & L. S. M. & S. Co.* 40 Wis. 418. See *Tanner v. Gregory*, 71 Wis. 490. But the relief here asked for is not at all analogous. The plaintiff is not a stockholder. The corporation is not organized. There is no stock *in esse.* The subject matter of the suit for specific performance does not exist, and never has existed. If it had once existed, so as to entitle the plaintiff to sue in equity therefor, and thereafter the defendants had put it out of their power to comply with their contract, a court would be justified in holding the suit in equity for awarding compensation in money. *Hall v. Delaplaine*, 5 Wis. 206, 216, 217; Pom. Spec. Perf. §§ 475– 477. But in this case the contract, as I think, was of such a nature that equity could and would not enforce it, and consequently the court will not hold the case to award a money judgment. This contract, if enforced, would compel the court first to *create* the subject matter of the suit, and then order its *delivery* to the plaintiff. I do not think,

upon authority or in reason, the court could compel a defendant to create a corporation, even if all the provisions of the charter or articles had been definitely agreed upon, which corporation should *create* certain common and certain preferred stock, even if the exact conditions of such stock had been prescribed in the agreement, so that the subject matter might be brought into *esse* for the purpose of being delivered to the plaintiff. Courts refuse to compel the building of railroads, or the erection of buildings, or the cultivation, cutting, and delivery of crops, etc. Pom. Spec. Perf. § 312, and note; 2 Mor. Priv. Corp. § 1136, and note. With much more reason, it seems to me, should they decline to compel the organization of corporations and the creation of stock, with all the details necessarily accompanying such proceedings, especially in a case where the plaintiff has a clear remedy at law and has himself fixed the exact amount of his damages by reason of a violation of the contract made with him.

"If this action will not lie in equity for the reason I have stated, it is not material what the defendants have done since the making of the contract. Such acts would not aid the plaintiff's cause of action, if otherwise insufficient. But I am strongly inclined to the opinion that, under the allegations of the amended complaint, which is before me on demurrer, the defendants who are here demurring are not necessary or proper parties to a suit for specific performance, particularly defendants *McGeoch* and the railway company. See *Gilman v. S. & F. du L. R. Co.* 40 Wis. 653-657; Pom. Rem. § 366. If, as claimed by plaintiff's counsel, the action should be retained for the purpose of awarding damages as for breach of contract against defendants *Ryan* and *Fahnstocks*, the parties to the contract, certainly these defendants who are demurring here are not necessary or proper parties to such controversy, as no cause of action exists against them for such damages.

"On the whole I am forced to conclude that the demurrers must be sustained."

For the appellant there was a brief signed by *F. L. Gilson & Hugh Ryan*, attorneys, and *Hugh Ryan*, of counsel, and the cause was argued orally by *Mr. Ryan*. They contended, *inter alia*, that it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practicable and efficient to the ends of justice and its prompt administration as the remedy in equity. *Boyce's Ex'rs v. Grundy*, 3 Pet. 210, 215; *Oelrichs v. Spain*, 15 Wall. 211; *May v. Le Claire*, 11 id. 217; *Barber v. Barber*, 21 How. 582; 1 High on Injunctions, sec. 33. That is not an adequate legal remedy of which the person can avail himself only by going into a foreign jurisdiction. 1 High on Injunctions, sec. 29; *Stanton v. Embry*, 46 Conn. 595; *Johnson v. Brooks*, 93 N. Y. 337.

For the respondents there was a brief by *Finches, Lynde & Miller*, and oral argument by *B. K. Miller, Jr.*

Lyon, J. I. The appeal from the order sustaining the general demurrers to the amended complaint will first be determined. The action is essentially one to enforce the specific performance of an executory contract to transfer to plaintiff certain shares of the capital stock of the defendant the *Milwaukee City Railroad Company*, the new corporation organized by the purchasing defendants, and, failing that, to recover, by way of compensation, $75,000, the alleged value of such stock, from the defendants. The demurrers raise the question whether the plaintiff has an adequate remedy at law. If he has, the demurrers were properly sustained. *Gale v. Cutler*, 1 Pin. 253; *Trustees of Kilbourn Lodge v. Kilbourn*, ante, p. 452, and cases cited.

The stock which the plaintiff seeks to obtain in this action, through the specific enforcement of his executory contract with *Ryan* and his associates, is personal property.

R. S. sec. 1751. It is also a kind of property customarily bought and sold in the market, like grain, lumber, and numerous other commodities; and from its very nature has no peculiar special value other than its market value. The plaintiff has ascertained and stated such value. The case could not be different in principle were the subject matter of the controversy 1,000 bushels of wheat or 100,000 feet of pine boards, or any other quantity of a specified grade, instead of shares of stock in a street railroad company. In all such cases compensation in damages is considered and held to be an adequate remedy for the breach of an executory contract to sell or purchase, especially where no trust relation exists between the parties. Such relation did exist in *Dousman v. Wisconsin & L. S. M. & S. Co.* 40 Wis. 418, and Dousman was the equitable owner of the stock. No such relation exists here. The plaintiff never owned the stock in controversy, and never had any lien upon it. He dealt with *Ryan* and his associates at arms-length and on equal terms. Neither is the solvency of the purchasing defendants questioned. The presumption is they are pecuniarily responsible for any judgment for damages the plaintiff may recover against them for their failure to transfer the stock to him as they agreed. Under these circumstances the plaintiff has an adequate remedy at law, unless it is destroyed or impaired by the facts that *Ryan* and the *Fahnstocks* reside in another state and have no property in this state. The learned counsel for the plaintiff cites authorities to the proposition that those facts render the remedy at law inadequate. The principle of these adjudications seems to be that, if the plaintiff must resort to a foreign tribunal to enforce his legal rights, the remedy is inadequate. We do not here controvert this doctrine, although we do not determine its correctness.

The plaintiff has an adequate legal remedy in the courts of this state. His amended complaint shows that the cap-

ital stock of the *Milwaukee City Railway Company* — worth by his own showing $1,500,000 — has been transferred to the new corporation, and that the defendants are the owners thereof. He may bring his action at law against the purchasing defendants for damages for the breach of his contract, attach their stock, and, after he obtains judgment, sell sufficient thereof on execution to pay such judgment. R. S. sec. 2731, subd. 5; Id. secs. 2738, 2989, 2990. If the new corporation has not actually transferred the stock to the defendants, the same may be reached in a garnishee action against such corporation. We conclude that the plaintiff has an adequate remedy at law, and hence that the demurrers were properly sustained.

II. It necessarily results from the above conclusion that the preliminary injunction was properly dissolved. A bill barren of equity will not support an injunction. This proposition is not controverted.

It is claimed that the order of reference to ascertain the damages sustained by reason of the injunction was prematurely made. The point is well taken. There is no breach of the undertaking on the injunction until the court finally decides that the plaintiff was not entitled to an injunction. R. S. sec. 2778; *Kane v. Casgrain*, 69 Wis. 430. The order of reference in this case was made before any such final decision.

But, although the order was prematurely entered, it does not necessarily follow that it must be reversed. It is now finally decided that the plaintiff was not entitled to an injunction, and the condition of the undertaking is broken. It would be idle to reverse the order of reference, when, upon the cause being remanded, it would be the duty of the superior court to repeat the order, or in some other way to assess the defendants' damages on the injunction. The order is now correct, and should not be disturbed, although prematurely made. See *State ex rel. Voight v. Hoeflinger*, 31 Wis. 257.

Perhaps a more elaborate opinion would have been written had not the legal questions involved in the case been so fully and ably considered and discussed by Judge Noyes in his opinion sustaining the demurrers, which will be inserted in the report of the case.

*By the Court.*— The orders from which these appeals were taken are both affirmed.