Argued 21 April, decided 16 May, 1904.

## LIVESLEY *v.* JOHNSTON.

[76 Pac. 13, 946.]

DISMISSING APPEAL—TERMINATION OF CONTROVERSY.

1. Though an appeal should be dismissed when the cause of controversy has ceased to exist, such a disposition should not be made of a case where the only result of the change is to perhaps render the judgment or decree fruitless. If the dispute still exists, it should be determined.

For instance: In a suit to require specific performance of a contract to sell chattels where an interlocutory injunction restraining the defendant from disposing of the property was dissolved upon a decree being entered against the plaintiff, the appeal should not be dismissed because the defendant thereafter sold the property and it was removed from the state. The plaintiff's right to a decision on the merits of his claim cannot be destroyed by the act of defendant: *Moores* v. *Moores*, 36 Or. 261, and *State ex rel.* v. *Grand Jury*, 37 Or. 542, distinguished.

MUTUALITY OF CONTRACTS OF SALE ON CONDITION OF QUALITY.

2. A contract of sale binding one party to sell and the other to buy a certain quantity of property of a designated quality is not unilateral because the determination of the quality or quantity is left to some third person or even to one of the parties, the legal implication being that each shall act honestly and fairly.

This case affords an illustration of the application of the rule stated : A contract by which a grower agrees to sell and deliver a specified quantity of his crop of hops, and the buyer agrees to pay therefor a certain price in partial payments at stated times, is not wanting in mutuality because it provides that if the hops be of a lesser quality than agreed on, or not delivered in the condition agreed on, "according to the judgment" of the buyer, he shall still have the privilege of taking them, or enough to cover the advances, at a reduction in price equal to the difference in value between them and hops of the quality contracted for, or because it provides that the buyer shall have the right to determine at picking time whether the crop is in proper condition, and, if it is not in such condition, the buyer shall be released from obligation to furnish picking money. In these contingencies the legal obligation rests on both parties to be fair, and if either is not, the other party has a remedy, so the contract is quite bilateral.

SPECIFIC PERFORMANCE OF CONTRACT TO SELL—REMEDY AT LAW.

3. Though usually an action at law is an adequate remedy for the nonperformance of a contract to sell personalty, it may be otherwise, and that an award of damages will not afford the redress to which the injured party is entitled. Under such circumstances equity will decree a specific performance.

INSOLVENCY AS A REASON FOR SPECIFIC PERFORMANCE.

4. Insolvency of the vendor in a contract for the sale of chattels is not of itself a sufficient reason for decreeing a specific performance of such contract, though it may be a persuasive factor in deciding a court to act where it already has jurisdiction on other grounds.

SPECIFIC PERFORMANCE OF CONTRACT TO SELL PERSONALTY.

5. A contract of sale and delivery, at a certain price, of crops to be grown in certain succeeding years—the buyer each year to advance for cultivating and picking purposes a sum exceeding half the agreed price, to become a lien on the crops—will be specifically enforced, to the extent that after the crops have been produced, and the buyer has contributed to the production, or has at all times been ready and willing to do so, delivery will be required ; the venture being in a sense, a joint one, whereby the seller becomes, in a manner, a trustee, the buyer

having at the making of the contract, as part consideration, surrendered the seller's note, and the seller being insolvent.

SPECIFIC PERFORMANCE—COMPLAINT.

6. The complaint in an action to compel delivery of crops under a contract by which defendant sold and agreed to deliver crops to be raised by him on land alleged in the contract to be owned by certain other persons, need not allege that defendant held the land under a lease, so as to give him a potential interest in the crop, the inference being that he had rented it.

IDEM.

7. The complaint in an action to compel delivery of crops under a contract by which defendant sold and agreed to deliver crops to be grown, they to be of choice quality and in first-class condition, need not allege that they were of the quality and in the condition agreed, as defendant cannot complain if plaintiff is willing to take them as of the stipulated quality and condition.

From Marion : REUBEN P. BOISE, Judge.

Suit by T. A. Livesley and John J. Roberts to require John Johnston to specifically comply with a contract to sell plaintiffs certain hops, other parties being made defendants because they were connected with the possession of the property. The suit was dismissed on demurrer to the complaint, from which order plaintiff appealed. Defendant's motion to dismiss the appeal was overruled, and the case reversed on the merits, both opinions being written by Mr. Justice WOLVERTON. Additional facts appear in the opinions.     MOTION OVERRULED : REVERSED.

_ _ _ _ _ _

Decided 4 April, 1904.

ON MOTION TO DISMISS APPEAL.

*Mr. Loring K. Adams* and *Mr. George G. Bingham,* for the motion, relied on the following authorities :

When the subject matter in controversy has disappeared or ceased to exist, or when for any reason the decree cannot be operative (as here, where the property sought to be specifically obtained has gone beyond the reach of the courts), the appeal is uniformly dismissed : *Moores* v. *Moores,* 36 Or. 261 (59 Pac. 327); *State ex rel.* v. *Grand Jury* 37 Or. 542 (62 Pac. 208); *Kidd* v. *Morrison,* Phill. Eq. 31;

*Hice* v. *Orr*, 16 Wash. 63 (47 Pac. 424); *Washington Market Co.* v. *District of Columbia*, 137 U. S. 62 (11 Sup. Ct. 4); *California* v. *San Pablo & T. Ry. Co.* 149 U. S. 308 (13 Sup. Ct. 876); *Mills* v. *Green*, 159 U. S. 651 (16 Sup. Ct. 132); *Allen* v. *Georgia*, 166 U. S. 138 (17 Sup. Ct. 525); *Kimball* v. *Kimball*, 174 U. S. 158 (19 Sup. Ct. 639); *Thorp* v. *Bonnifield*, 177 U. S. 15 (20 Sup. Ct. 533); *Montana Min. Co.* v. *St. Louis M. & M. Co.* 186 U. S. 24 (22 Sup. Ct. 744); *Tennessee* v. *Condon*, 189 U. S. 64 (23 Sup. Ct. 579).

*Mr. Wirt Minor* and *Mr. Woodson T. Slater*, *contra*, relied on the following authorities:

The rights of parties to controversies pending in this court are fixed by the record made in the court from which the appeal is taken, and cannot be affected by subsequent actions of their adversaries: *Walker* v. *Goldsmith*, 14 Or. 125 (12 Pac. 537); *Houston* v. *Timmerman*, 17 Or. 499 (4 L. R. A. 716, 11 Am. St. Rep. 848, 21 Pac. 1037); *Jennings* v. *Kiernan*, 35 Or. 349 (55 Pac. 443); *Posson* v. *Guaranty Loan Assoc.* 44 Or. 106 (74 Pac. 923); Waterman, Spec. Perf. §§ 512, 515, 517.

Mr. Justice Wolverton delivered the opinion.

1. The purpose of the present suit is to require the specific performance of a contract made and entered into by and between plaintiffs and defendant Johnston for the purchase and sale of 110 bales of hops, which were to be, and were, grown and produced by Johnston. The complaint contains the usual allegations of performance on the part of the plaintiffs, but avers that defendant Johnston refused to comply with the stipulations on his part to deliver the hops to plaintiffs as contracted. It is further alleged that the defendants Adolf Wolf & Son claim to have a lien upon the hops, and the defendant the Southern Pacific Company has them in its possession, having been delivered to it by Johnston. The prayer is for a tem-

porary injunction restraining the defendants or either of them from selling or disposing of the hops or removing them from their present place of storage until the final determination of the suit, and for a decree requiring the specific performance of the contract for the delivery of the hops by defendants to plaintiffs. The injunction was allowed as prayed, to be and continue in force and effect until the further order of the court. Subsequently a demurrer was interposed to the complaint, and sustained, whereupon a decree was entered dismissing the suit and dissolving the injunction. From this decree plaintiffs have appealed, having given notice thereof in open court at the time of its rendition.

The defendants now move to dismiss the appeal, basing their motion upon a showing that the defendant Johnston has since the decree disposed of the hops, which have been shipped out of the state and beyond the jurisdiction of the court. The contention is that, as the subject-matter of the suit has been disposed of and taken beyond the jurisdiction of the court, the decree respecting it could not become effective or operative, and hence the appeal should be dismissed. This seems to us to mistake the real issue, which is whether Johnston should or should not be required to perform his contract. Whether the hops are still within the custody of the law or not, is not the question. The suit could as well have been commenced without as with the injunction, and all the issues tried out and the cause fully determined. The injunction is allowed under the statute as a provisional remedy: B. & C. Comp. § 417. It is an auxiliary proceeding, and was resorted to in the present instance to preserve the *status quo* of the property during the pendency of the suit, so that plaintiffs, if successful, might be the better enabled to enforce their decree. The enforcement of the decree, however, is

no part of the cause of suit, and the probable insuscepti-
bility of its enforcement affords no reason why a person
may not obtain the decree if he desires to be at the pains;
so that the plaintiffs here have the right to their decree if
their cause of suit is well founded, notwithstanding John-
ston has disposed of the hops and the court is unable to
reach them with its process. Whether he had a right to
do this in the face of the appeal, or what effect the appeal
may have had upon the status of the injunction, are mat-
ters with which we are not at present concerned. It is
sufficient that Johnston could not determine the cause of
suit by his own act in rendering the decree more difficult
of enforcement, if one should be finally obtained against
him. What he did was not effective to determine the suit
or controversy in any sense, and the cause yet remains to
be disposed of. The many authorities cited by counsel
are inapplicable to the present conditions, they being
cases where, by reason of the action of the parties or the
efflux of time, there was no real controversy left for .de-
termination.

The motion to dismiss will therefore be denied.

———·———

Decided 16 May, 1904.

ON THE MERITS.

MR. JUSTICE WOLVERTON.

This is a suit to require the specific performance of a
contract or agreement for the sale of hops, entered into
September 5, 1902, between the defendant Johnston, of
the first part, and the plaintiffs, T. A. Livesley & Co., of
the second. That portion of it material to the controversy
is as follows:

"That said party of the first part * * for· and in con-
sideration of the sum of one dollar in hand paid by the

parties of the second part, the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents does grant, sell and convey and agree to deliver unto the parties of the second part, * * 20,000 pounds of hops of the crops to be raised and grown by the party of the first part at or near Woodburn in each of the following years : 1903, 1904, 1905, 1906, 1907, on the following described real estate, which is owned by Frank Chappelle, Melane Chappelle and Peter Deltaur [describing it], and to deliver the said hops in each of said years at Woodburn depot or on board cars free of charge, at such time between the 1st and 31st of October of each of said years as the parties of the second part may direct, each bale of said hops to contain from one hundred and eighty to two hundred twenty pounds of hops (seven pounds tare per bale to be allowed) and are to be put up in new 24-oz. bale cloth. The said hops shall be of choice quality, of even color, well and cleanly picked and well cured, but not high or slack dried, and not broken or mouldy.

The said parties of the second part agree to advance to the said party of the first part for the purpose of cultivating, two hundred fifty dollars on or about April, May and June, and for picking purposes at and during picking time of September of each of said years, the sum of $4\frac{1}{2}$ cents per pound, and for such advances a lien is hereby granted to parties of the second part on said crop of hops prior and preferable to all other liens ; and upon the delivery and acceptance of said hops, the said parties of the second part will pay in current funds of the United States or their equivalent at Salem, Oregon, the balance due on said hops at $9\frac{1}{2}$ cents per pound, that being the agreed price for said hops, and all money advanced for the purposes aforesaid is to be deducted from the purchase price of said hops. The advances made for cultivating shall bear interest at the rate of eight per cent, and advances made for harvesting purposes at the rate of eight per cent.

Should said hops be from any cause of a lesser quality than choice, or not delivered in the condition herein agreed upon according to the judgment of said parties of the second part or their agent, the party of the second part shall nevertheless have the privilege of taking the

same, or so many of them as will cover the amount advanced on said crop of hops, with interest at the rate of eight per cent per annum, at a reduction in price equal to the difference in value between such hops and choice. * *

The party of the first part shall not be liable (except to repay advances) for any shortage on delivery due to causes beyond his control. It is furthermore agreed that the party of the second part, through their agents shall have the right to determine at picking time when said advances are contemplated to be made, whether or not the growing crop at that time is in proper condition, and if such agents of the party of the second part shall determine that the growing crop is not in such condition, that said party of the second part shall be released from any obligation to furnish any picking money as called for in this contract."

The succeeding clause of the agreement is in effect a chattel mortgage upon the hops to secure the buyer in the repayment of moneys advanced or to be advanced the grower in pursuance of the agreement.

The complaint sets out, among other things, the entering into the agreement by the parties; that, as part consideration for the execution thereof plaintiffs paid to Johnston the sum of one dollar and also surrendered up and delivered to him certain promissory notes due and payable to the plaintiffs, of the face value of $650; that plaintiffs have performed and have been at all times ready and willing to perform all the agreements and covenants upon their part, and have offered and tendered to Johnston the advances required to be made by them, but that Johnston some time early in the year 1903 notified the plaintiffs that he would not accept any advances, and declared that he would no longer be bound by the terms and conditions of the agreement, and has continuously refused to deliver to plaintiffs the hops produced for the year 1903, consisting of 110 bales, of the aggregate weight of 20,000 pounds; that defendant Johnston is wholly insolvent and unable to respond in damages for the breach of his agreement,

and plaintiffs have no plain, speedy, and adequate remedy at law. The purchase price is tendered into court, and a decree demanded that Johnston be required to perform by delivery to plaintiffs of the hops designated. A demurrer was interposed to the complaint and sustained, and, the complaint having been dismissed, the plaintiffs appeal.

REVERSED.

. For appellants there was an oral argument by *Mr. Wirt Minor* and *Mr. Woodson T. Slater*, with a brief over the names of *Teal & Minor, W. T. Slater,* and *William M. Kaiser*, to this effect.

I. The agreement is mutual and not unilateral. The seller agrees to sell certain property at a certain price, payable on or before delivery, and the buyer tendered the price and demanded the goods: *Wise* v. *Ray*, 3 G. Gr. 430; *Patchin* v. *Swift*, 21 Vt. 292; *Mill Co.* v. *Goodnough*, 40 Minn. 497 (4 L. R. A. 202); *Penniman* v. *Hartshorn*, 13 Mass. 87; *Justice* v. *Lang*, 42 N. Y. 493 (1 Am. Rep. 496); *Cutting* v. *Dana*, 25 N. J. Eq. 265; *Waterman* v. *Waterman*, 27 Fed. 827; *Johnston* v. *Trippe*, 33 Fed. 530; *Storm* v. *United States*, 99 U. S. 83.

II. The consideration of the agreement moving to the defendant is threefold: the past indebtedness of the defendant to the plaintiffs, a sum of money paid defendant by plaintiffs at the time the agreement was made, and the several promises of the plaintiffs: 1 Parsons, Contracts, 436, 444, 448.

III. The agreement in controversy was founded upon a valuable consideration — the promises on behalf of Johnston are unequivocal, positive, and unconditional. It is, therefore, immaterial whether the plaintiffs, by the terms of the agreement, were or were not bound to purchase the hops: *Johnston* v. *Trippe*, 33 Fed. 530; *Perkins* v. *Hadsell*, 50 Ill. 216; *Miller* v. *McKenzie*, 95 N. Y. 575 (47 Am. Rep. 85); *Clason* v. *Bailey*, 14 Johns. 484; *In re Hunter*, 1

Edw. Ch. 1; *Van Dorn* v. *Robinson*, 16 N. J. Eq. 256; *Hawralty* v. *Warren*, 18 N. J. Eq. 124 (90 Am. Dec. 613); *Smith's Appeal*, 69 Pa. St. 474; *Rogers* v. *Saunders*, 16 Me. 92 (33 Am. Dec. 635); *Vassault* v. *Edwards*, 43 Cal. 458; *Schroeder* v. *Gemeider*, 10 Nev. 355; *Waterman* v. *Waterman*, 27 Fed. 827; Waterman, Spec. Perf. § 200; Fry, Spec. Perf. § 291.

IV. It is the chief and immediate duty of the seller to tender the goods to the buyer at the place and time fixed by the agreement, and the buyer's duty to accept the goods so tendered and pay the purchase price agreed on: 21 Am. & Eng. Ency. Law (1 ed.), p. 522–531, 544, 554; 2 Benjamin, Sales, (4 Am. ed.) §§ 1013–1016, 1024–1026; *Bement* v. *Smith*, 15 Wend. 493; *Dustin* v. *McAndrew*, 44 N. Y. 72; *Hayden* v. *DeMetz*, 53 N. Y. 426; *Mason* v. *Decker*, 72 N. Y. 595 (28 Am. Rep. 190); *Hunter* v. *Wetsell*, 84 N. Y. 549 (38 Am. Rep. 544); *Bagley* v. *Findlay*, 82 Ill. 524; *Bell* v. *Offutt*, 10 Bush, 632; *Ballentyne* v. *Robinson*, 46 Pa. St. 177; *Sedgwick* v. *Cottingham*, 54 Iowa, 572; *Nichols* v. *Morse*, 100 Mass. 523; *Brigham* v. *Hibbard*, 28 Or. 386 (43 Pac. 383); *Wadhams* v. *Balfour*, 32 Or. 313 (51 Pac. 642); *Gunther* v. *Attwell*, 19 Md. 157.

V. The end of every contract is the accomplishment of the thing stipulated, and therefore the most direct and effectual remedy, where one party refuses to observe the contract, should be the enforcement of the promise. The law, moreover, regards money as the measure of every loss, a proposition which is frequently but not universally true, and this legal principle results in a defect of justice. It was this inadequacy of the remedy at law which gave rise to the jurisdiction of equity, which was invoked for the specific performance of contracts at a very early date: Waterman, Spec. Perf. §§ 1–5, 16–20; 2 Story, Eq. Juris. §§ 712, 718; Adams, Eq. § 77.

VI. The facts alleged in the complaint and admitted

by the demurrer show that the remedy at law is inadequate. Insolvency has ever been held to be a ground of equity jurisdiction, as the beneficial effect of the judgment depends upon the solvency of the judgment debtor: *Clark v. Flint*, 22 Pick. 231 (33 Am. Dec. 733); *Somerby v. Buntin*, 118 Mass. 279 (19 Am. Rep. 459).

For respondents there was an oral argument by *Mr. George G. Bingham* and *Mr. Peter H. D'Arcy*, with a brief over the names of *Peter H. D'Arcy, Carson & Adams*, and *George G. Bingham*, to this effect.

1. Specific performance of contracts relating to personal property is enforced by the courts only in exceptional cases. This is the general rule: Waterman, Spec. Perf. § 5; *Rector of St. David's v. Wood*, 24 Or. 396 (41 Am. St. Rep. 860, 34 Pac. 18).

2. A decree for the specific performance even of contracts for the sale of real property, " does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand in view of all the circumstances of the case": *McCabe v. Matthews*, 155 U. S. 550 (15 Sup. Ct. 190); *Pope Mfg. Co. v. Gormully*, 144 U. S. 224 (12 Sup. Ct. 632); *Snider v. Lehnherr*, 5 Or. 385, 390.

3. The courts seldom enforce specific performance of contracts covering a long period of time, or where specific performance is impracticable: *Marble Co. v. Ripley*, 77 U. S. 339; *Texas & Pac. Ry. Co. v. City of Marshall*, 136 U. S. 393 (10 Sup. Ct. 846); *Iron Age Pub. Co. v. Western Union Tel. Co.* 83 Ala. 498 (3 Am. St. Rep. 758, 3 So. 449); *Sturges v. Galindo*, 59 Cal. 28 (43 Am. Rep. 239).

4. Insolvency of the defendant will not give the court jurisdiction to enforce specific performance of his contract: *Cincinnati, etc. Ry. Co. v. Washburn*, 25 Ind. 259.

5. Contracts for personal services cannot be specifically enforced: *Cort v. Lassard*, 18 Or. 221 (17 Am. St. Rep. 726, 6 L. R. A. 653, 22 Pac. 1054); Clark's Case, 1 Blackf. 122

(12 Am. Dec. 213); *Blanchard* v. *Detroit Ry. Co.* 30 Mich. 44, 59; *Roberts* v. *Kelsey,* 38 Mich. 602; *Iron Age Pub. Co.* v. *Western Union Tel. Co.* 83 Ala. 498 (3 Am. St. Rep. 758, 3 So. 449); *Cincinnati Ry. Co.* v. *Washburn,* 25 Ind. 259; *Columbus Ry. Co.* v. *Watson,* 26 Ind. 50; *The William Rogers Mfg. Co.* v. *Rogers,* 58 Conn. 356 (18 Am. St. Rep. 278, 7 L. R. A. 779, 20 Atl. 467).

6. Where the property is not in existence at the time of the contract or where defendant has no title at such time, a contract to convey will not be specifically enforced even when defendant afterwards becomes possessed of the property: *Manton* v. *Ray,* 18 R. I. 672 (49 Am. St. Rep. 811, 29 Atl. 998); *Kennedy* v. *Hazleton,* 128 U. S. 667 (9 Sup. Ct. 202); *Norris* v. *Fox,* 45 Fed. 406; *Sellers* v. *Greer,* 172 Ill. 549 (40 L. R. A. 589, 592, 50 N. E. 246); *Whiteaker* v. *Van Schoiack,* 5 Or. 113.

7. Equity has no jurisdiction to enforce the specific execution of contracts to cultivate crops in a particular way, or deliver products of farms for past and future advances: *Hall* v. *Joiner,* 1 S. C. 186; *Starnes* v. *Newsom,* 1 Tenn. Ch. 239.

8. Courts will not specifically enforce a contract, even though valid at law, unless it is fair, just, reasonable, and equal in all its parts: *Duvall* v. *Myers,* 2 Md. Ch. 401; *Barrett* v. *Schleich,* 37 Or. 613, 617 (62 Pac. 792); *Wagonblast* v. *Whitney,* 12 Or. 83, 88 (6 Pac. 399); *Dodd* v. *Home Ins. Co.* 22 Or. 13, 14 (29 Pac. 3); *Starnes* v. *Newsom,* 1 Tenn. Ch. 239; *Hissam* v. *Parrish,* 41 W. Va. 686 (56 Am. St. Rep. 892, 24 S. E. 600); *Rust* v. *Conrad,* 47 Mich. 449 (51 Am. Rep. 720).

9. A contract in order to be specifically enforced by either party must have been capable of specific enforcement by the other party at the time the contract was executed: *Norris* v. *Fox,* 45 Fed. 406; *Sellers* v. *Greer,* 172 Ill. 549 (40 L. R. A. 589–592, 50 N. E. 246).

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

2. In support of the demurrer it is first insisted that the contract or agreement set out, upon which the suit is founded, and which it is sought to have specifically performed, is lacking in the essential of mutuality of obligations between the contracting parties, and is therefore without validity or binding effect. The plaintiffs stand upon the agreement, and, of course, assert its legal efficacy. They insist, first, that it does contain mutual obligations which alone render it binding upon both parties; but, if not, that it at least has the force and effect of an option accorded the plaintiffs to purchase the hops, founded upon a sufficient consideration to support it. A promise founded upon a good consideration rendered at the time is obligatory and enforceable. A loan of money and simple-contract debts are familiar instances of the kind. The promise to repay the money or to discharge the debt becomes binding and obligatory by reason of the promisor having received a consideration for making it. When, however, a promise, by whatsoever reason, has become binding, it is more aptly termed an "obligation." But a promise of material import will support a counter promise and *vice versa*. When mutually entered into, they operate one as a consideration for the other; thus constituting an agreement binding and obligatory upon both parties. Where the agreement is wholly executory, it is essential that the obligations be mutual; else there is no consideration for its support, and it is but a mere *nudum pactum*. These simple principles, aptly applied, will aid us largely in the present controversy.

The contract is between a producer of hops, on the one part, and dealers in that commodity, upon the other. Its terms unmistakably import a sale of the hops to the amount of 20,000 pounds, to be grown by Johnston in each of the five years designated, and an agreement upon his part

to deliver them at Woodburn, on board the cars, free of charge, at such time during the month of October as the second parties may direct. The manner in which the hops shall be baled and their quality are specifically defined. This is a clear and absolute undertaking on the part of the seller. The correlative and reciprocal promises on the other part are that the second parties will advance to the first party $250 on or about April, May, and June of each year for cultivating purposes, and 4½ cents per pound for picking purposes during picking time, in September, and, upon delivery and acceptance of the hops, that they will pay the balance due thereon at 9½ cents per pound, that being the agreed price for the product; all moneys advanced to be deducted from the purchase price. If the contract rested here, nothing else being said, no other provisions made, there could be no cavil or controversy touching its validity and binding effect. It would have then simply been a sale of the hops to be grown, with an agreement to deliver on the one part, and an undertaking on the other part to advance $250 for the purpose of cultivating, 4½ cents per pound for picking purposes, and to pay 9½ cents per pound for the hops upon delivery and acceptance; reserving the right, as was natural, to deduct advances made from the purchase price, paying merely the balance due. The promises of the parties would then have been mutual — that upon the one hand supporting those upon the other, and *vice versa,* thus creating correlative and reciprocal obligations — and the contract would unquestionably have been perfectly valid and binding upon both parties. But the promises upon the part of Livesley & Co. to advance picking money and accept the hops are materially qualified by subsequent conditions of the contract, and all its provisions must be construed together to arrive at its true intendment. They are interdependent in character, and none can be eliminated without destroy-

ing the contractual intendment and relationship of the parties. Should the hops be, from any cause, of lesser quality than choice, or not delivered in the condition agreed on, "according to the judgment" of Livesley & Co. or their agent, the contract accords them the privilege, nevertheless, of taking the same, or so many thereof as would be sufficient to cover the advances made on the crop, at a reduction in price of the difference in value between such hops and choice; and it was further stipulated that Livesley & Co. should, through their agent, have the right to determine at picking time whether or not the growing crop was in proper condition, and, if found not to be so, then that they should be relieved from making the stipulated advances of picking money. Thus analyzed, we are enabled to comprehend at a glance the essential features of the contract.

Now, the strong contention of counsel for defendants is that the stipulation that if the hops should be of lesser quality than choice, or not in condition as agreed upon, " according to the judgment" of Livesley & Co. or their agent, accorded to them the right or privilege of taking the crop, or not, subject to their mere will or caprice; thus nullifying their promise to purchase, and rendering it of no appreciable obligatory or binding effect upon them. ˙ And so with the contemplated advances of picking money. They assert that it was left entirely to their consideration, to be governed by their mere choice or pleasure in the premises. Ordinarily the purchaser of a commodity has the right of inspection upon delivery before acceptance, and, if it does not correspond in kind, quality, condition, or amount to that which is purchased or contracted for, he may reject it: Benjamin, Sales (7 ed.) §§ 695, 701; 2 Mechem, Sales, §§ 1210, 1211, 1375, 1376. The purchaser is conceded the exercise of his judgment, but he exercises it at his peril, and, if he rejects the com-

modity, which nevertheless comes up to the stipulated standard, he is yet bound for the purchase price, and the seller may recover it of him on proof that he has complied with the terms of the sale. Many cases are to be found where work is agreed to be done, articles furnished, or goods delivered upon sale, to the satisfaction of another, and it is uniformly held that the person to be benefited may exercise his choice of rejection or acceptance without assigning any reason therefor. That he ought to be satisfied, or that the work, articles, or goods would be satisfactory to a reasonable man or to a court or jury, will not avail as against the exercise of his convictions of sentiment. It is sufficient that he is not satisfied, and his own determination must be taken as final and conclusive. The cases proceed upon the assumption that the buyer has thus reserved to himself an unqualified option, not being willing to leave his freedom of choice to any contention or subject to any investigation whatever, and whatever decision he arrives at determines the controversy. If the question is one appealing to taste, sentiment, or artistic sensibility, as where the undertaking is to supply a portrait, bust, suit of clothes, musical instrument, article of furniture, or the like, it is, of course, the duty of the buyer to examine the subject of the purchase, and not to reject it unseen, but his determination upon examination cannot be questioned. Where, however, the agreement is to supply a machine which is to work to the satisfaction of the vendee, a reasonable test is required, and he must act in good faith and with honesty of purpose, and cannot be heard to express dissatisfaction which is wholly feigned or simulated. So it has been held in this class of cases that where the purchaser was in fact satisfied, but fraudulently and in bad faith declared that he was not, he is bound nevertheless, and must respond for the purchase price. "It is quite permissible," says Mr. Justice BRYAN, of the Supreme Court

of Maryland, "to parties to enter into such contracts; and where the approval or satisfaction of the party is made a condition precedent to the right to receive compensation, or the contract price, for the article to be delivered, the court has no right or power to dispense with the condition": *Baltimore & Ohio R. Co.* v. *Brydon*, 65 Md. 198, 226 (9 Atl. 126, 127, 57 Am. Rep. 318). And their validity seems to be unquestioned: 1 Mechem, Sales, §§ 663–668; *Campbell Print. Press Co.* v. *Thorp*, (C. C.) 36 Fed. 414, (1 L. R. A. 645); *Silsby Mfg. Co.* v. *Town of Chico*, (C. C.) 24 Fed. 893 ; *Zaleski* v. *Clark*, 44 Conn. 218 (26 Am. Rep. 446); *McCarren* v. *McNulty*, 7 Gray, 139 ; *Brown* v. *Foster*, 113 Mass. 136 (18 Am. Rep. 463); *Gibson* v. *Cranage*, 39 Mich. 49 (33 Am. Rep. 351); *Wood R. & M. Mach. Co.* v. *Smith*, 50 Mich. 565 (15 N. W. 906, 45 Am. Rep. 57); *Manufacturing Co.* v. *Brush*, 43 Vt. 528 ; *McClure* v. *Briggs*, 58 Vt. 82 (2 Atl. 583, 56 Am. Rep. 557)..

There is another class of cases where the article sold or the work to be done or performed is to be subject to the approval of, or to be satisfactory to, some third person, and in many instances that person is the agent or employé of one or the other of the parties to the contract. In cases of this character the approval of the party so designated becomes a condition precedent to a recovery for the price. He must, however, have acted in good faith and with an honest purpose, and cannot arbitrarily or capriciously exercise his judgment. If he violates his duty in this regard, a recovery may be had, in the absence of his approval, for the nonacceptance of the articles furnished. But in the absence of fraud or bad faith in the conduct of such party in respect of his approval or the withholding of it, his judgment or determination is to be accepted as final and conclusive. No mere error or mistake of judgment will vitiate his determination, the object of his appointment being to prevent and exclude conten-

tion and litigation. Such is said to be now the settled doctrine touching this class of contracts in the courts both of this country and England : *Baltimore & Ohio R. Co.* v. *Brydon*, 65 Md. 198 (57 Am. Rep. 318, 9 Atl. 126). See also, *Lynn* v. *Baltimore & Ohio R. Co.* 60 Md. 404 (45 Am. Rep. 741); *Kihlburg* v. *United States*, 97 U. S. 398 ; *Sweeney* v. *United States*, 109 U. S. 618 (3 Sup. Ct. 344); *Martinsburg & Potomac R. Co.* v. *March*, 114 U. S. 549 (5 Sup. Ct. 1035). We have had occasion to consider cases of this kind, of which *North Pac. L. & M. Co.* v. *East Portland*, 14 Or. 3 (12 Pac. 4); *Chance* v. *City of Portland*, 26 Or. 286 (38 Pac. 68); and *Vanderhoof* v. *Shell*, 42 Or. 578 (72 Pac. 126), are instances. In the latter case a building contract was involved, whereby it was stipulated that the builder should perform his work subject to the approval of the architect. Contracts of this nature are usual and frequent. The two former cases were concerning certain street improvements in the City of Portland, which were to " be completed to the satisfaction of the common council." In the first of these cases Mr. Justice THAYER, commenting upon the effect of the contract, says: " I think there must be a distinction between a contract in which the work is not to be paid for until a certificate is produced from some third person, showing that it has been performed in accordance with the provisions of the contract, and one in which it is to be paid for upon its approval and acceptance by the party for whom it is performed. In the former case the production of such certificate is a condition precedent to the right to demand the payment, and the party seeking to enforce payment must aver and prove its performance. In the latter case it is the duty of the party to approve and accept the work, if performed substantially as required by the contract, for certainly the law will not permit such party to capriciously withhold his approval in such case, and thereby avoid the payment of a just

claim." In *Baltimore & Ohio R. Co.* v. *Brydcn*, 65 Md.
198 (57 Am. Rep. 318, 9 Atl. 126), the defendant agreed
to furnish coal to the plaintiff of a quality that should be
satisfactory to plaintiff's master of transportation and
master of machinery, virtually its agent, and the stipula-
tion was upheld, which is coming very near to the con-
dition of the present contract. But in *Campbell Print.
Press Co.* v. *Thorp*, 36 Fed. 414 (1 L. R. A. 645), Mr. Jus-
tice BROWN, who is now on the supreme bench of the
United States, says, "We know of no reason of public
policy which prevents parties from contracting that the
decision of one or the other shall be conclusive;" and
such was practically the case in *Fletcher* v. *New Orleans
& N. E. R. Co.* (C. C.) 19 Fed. 731, and *Dustan* v. *McAndrew*,
44 N. Y. 72.

Within the undoubted doctrine of these cases, the con-
tract under consideration was one which the parties had a
right to enter into, and the clause leaving the quality and
condition of the hops at the time of delivery to the judg-
ment of the buyer does not render it void of mutuality.
Livesley & Co. could not reject the hops upon mere whim
or sheer volition, but must in good faith exercise an honest
judgment in the premises, and unless they, by themselves
or through their agent, so rejected them, they would never-
theless be bound for the price. Being a party and passing
judgment upon their own case, good morals and decent
propriety would suggest that they act with circumspection
and a considerate regard for the rights of the seller as well
as their own, and the law will look with greater scrutiny
upon their determinations than if they were wholly disin-
terested arbiters. While this condition qualifies to a certain
extent the promise to accept and pay for the hops, if choice
in quality and in good condition, as agreed upon, it does
not, by negation, destroy the efficacy of the promise. If
the sale had been the ordinary one of goods or chattels,

the buyer, as we have seen, would have exercised his judgment as to rejection at his peril, and the goods or chattels could be shown notwithstanding to be of the quality and condition agreed upon. In a sale like the one at bar, the buyer must also accept, unless, in his honest judgment, exercised in absolute good faith, the commodity is not such as was contracted for. If so exercised, his determination becomes final, because the parties have so agreed ; but if he exercises his judgment arbitrarily, capriciously, or fraudulently, with the sheer purpose of avoiding his obligation to accept, it will not avail him, as the actual quality and condition of the hops may then be inquired into, notwithstanding his adverse determination. The undertaking of Livesley & Co. is not, therefore, a mere option to take the hops or not, but a positive obligation to purchase, unless, in their honest judgment, fairly exercised, they are not of the quality or in the condition contracted for. In the respect considered, we are firmly of the opinion that the contract is mutual and binding. If the hops are not, in their honest judgment, up to the agreed standard, then they are accorded the privilege or option of purchasing, or not, as they may desire ; and this provision, when compared with the one just discussed, indicates very clearly the distinction that exists, and that which the parties themselves declared, between the agreement to purchase and a mere option to purchase, as may suit the wish of the buyer.

The same considerations apply alike to the obligation to advance picking money. It was not left to the mere option of Livesley & Co. to advance such funds as and when they saw fit, but they or their agent must pass an honest judgment as to whether or not the crop is in the proper condition ; that is, for the production of such hops as is bargained for. The purpose of this stipulation is apparent. Livesley & Co. would hardly be expected to advance money upon a contemplated product when it was manifest that it

would not come up to the standard in quality contracted for, and would furnish, at best, doubtful security for the repayment of the advances. But aside from these considerations, there is the obligation to advance $250 on or about April, May, and June of each year for cultivating purposes, which is unconditional; and when all the conditions are construed together, including the chattel-mortgage element, which is intended as security for repayment of advances made in case a sale is not consummated, we are impelled to the conclusion that the contract is mutual, and therefore valid and binding upon the respective parties. In view of these considerations, it is not necessary for us to determine whether or not, if the contract of Livesley & Co. was a mere option to purchase, it is supported by a sufficient consideration. Nor have we considered what would be the effect on the sale had Livesley & Co. declined to advance picking money, as it does not seem to be involved in the present controversy.

3. The next question presented is whether a court of equity has jurisdiction to decree a specific performance, by requiring a delivery of the crop of hops produced for the year 1903, to the amount of 20,000 pounds. It may be said that equity will not ordinarily grant relief for the specific delivery of chattels, because it is generally considered that the plaintiff has a plain, speedy, and adequate remedy at law for damages for withholding them. The interposition of equity is not withheld except upon this particular ground, as its jurisdiction is as ample to decree the specific performance of an agreement relative to personalty as it is one relative to realty: *Sullivan* v. *Tuck*, 1 Md. Ch. 59; *Frue* v. *Houghton*, 6 Colo. 318; *Duff* v. *Fisher*, 15 Cal. 376; *Mechanics' Bank* v. *Seton*, 26 U. S. (1 Pet.) 299; *Mason* v. *Patterson*, 74 Ill. 191; *Kirksey* v. *Fike*, 27 Ala. 383 (62 Am. Dec. 768); *Barnes* v. *Barnes*, 65 N. C. 261. The

45 OR.——4

remedy at law, however, which will bar such relief, must be as practical and efficient to the ends of justice and its prompt administration as in equity, or, to employ the language of Mr. Chief Justice FULLER in *Gormley* v. *Clark*, 134 U. S. 338, 339 (10 Sup. Ct. 554, 557) : "The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances ": *South Port. L. Co.* v. *Munger*, 36 Or. 457 (54 Pac. 815, 60 Pac. 5) ; *Benson* v. *Keller*, 37 Or. 120 (60 Pac. 918); *Wollenberg* v. *Rose*, 41 Or. 316 (68 Pac. 804) ; *Brett* v. *Warnick*, 44 Or. 511 (75 Pac. 1061). When, therefore, an award of damages would not put the party seeking equitable relief for the delivery of personalty in a situation as beneficial as if the agreement were specifically performed, or where compensation and damages would fall short of the redress to which he is entitled, the jurisdiction is properly invoked; otherwise not: *Frue* v. *Houghton*, 6 Colo. 318; *Avery* v. *Ryan*, 74 Wis. 591 (43 N. W. 317) ; *McGowin* v. *Remington*, 12 Pa. 56 (51 Am. Dec. 584).

4. And it may be further observed that the insolvency of the party against whom relief is sought, standing alone, will not confer jurisdiction to enforce specific performance in this class of cases. There must be some other element or principle of equitable cognizance upon which the remedy is invoked: *Gillett* v. *Warren*, 10 N. M. 523 (62 Pac. 975) ; *McLaughlin* v. *Piatti*, 27 Cal. 451 ; *Cincinnati & C. R. Co.* v. *Washburn*, 25 Ind. 259. The fact of insolvency, when combined with other causes for equitable interposition, may, however, become a potent or even controlling factor in determining the fact of jurisdiction. The principle is well stated by Mr. Justice THOMPSON in *Heilman* v. *Union Canal Co.* 37 Pa. 100, 104, as follows: "The fact, if it be so, that this remedy may not be successful in realizing the fruits of a recovery at law, on account of the

insolvency of the defendants, is not of itself a ground of equitable interference. The remedy is what is to be looked at. If it exist, and is ordinarily adequate, its possible want of success is not a consideration. It is not intended here to say that insolvency is never a consideration moving a chancellor. It frequently does, but not alone. The equitable remedy must exist independently. In balancing cases, it is a consideration that gives preponderance to the remedy." To the same purpose, see *Clark* v. *Flint*, 22 Pick. 231 (33 Am. Dec. 733) ; *Parker* v. *Garrison*, 61 Ill. 250.

5. Now, turning to the contract in question, and considering the situation and relation of the parties, do we not find independent grounds for equitable interference to grant relief by way of specific performance? We have already discussed the salient features, terms, and conditions of the contract, and have found it to be valid and binding between the parties. It covers a period of five years, and was made at a time, presumably, when Johnston was obtaining fair value for his hops—otherwise we must assume that he would not have entered into the relationship—and there is only one reason at this date why it may be considered to be a hard contract as to him, and that is that hops are worth more now in the market than they were then. Another suggestion in this connection : The commodity fluctuates greatly in the market, and it may have been a controlling circumstance that Johnston considered that $9\frac{1}{2}$ cents per pound for the hops raised by him during the five years designated would be a good average price for the time, and hence, upon the whole, a profitable undertaking. But the undertaking to produce the hops was not solely his own. Under the agreement, Livesley & Co. were to contribute to the expense of their production ; that is to say, they were to advance money for the purposes of cultivating and picking, amounting to more than one half of the agreed value of the product, which was to be-

come a lien thereon. In a sense, the venture was a joint one between the parties, where one was to provide the ground and bestow his labor, and the other to furnish the necessary funds for carrying it on ; the latter to be reimbursed their advances, with interest, in any event, however. The condition suggests a trust relationship between the parties, whereby the producer becomes, in a manner, a trustee of the buyer for the delivery of the product of the joint enterprise to the amount designated, and the contract has reference to the specific property to be produced under its terms. Further than this, it is alleged that plaintiffs surrendered to Johnston his promissory notes to the amount of $650 as part consideration for his entering into the contract, and an award of damages would not fully compensate them. Coupling these conditions with the fact alleged that the defendant is insolvent, so that a judgment at law against him would be bootless and utterly insusceptible of enforcement, we are constrained to resolve the question in favor of the equitable jurisdiction to enforce the specific performance of the contract.

It is further urged that the remedy is not reciprocal, and ought not, therefore, to be sanctioned. But it seems clear that Johnston would also have a remedy to enforce specific performance, should Livesley & Co. capriciously and fraudulently refuse to approve of the hops, as to quality and condition, or to accept them, as there would be involved the question of fraud, which is especially within the cognizance of equity, and the procedure would be more efficient to the ends of justice than an action for damages for a breach of their obligation.

We are not to be understood as holding that the defendant may be required to perform the labor or carry on the project of producing the crops, but, after they have been produced, and the plaintiffs have contributed to their production as required by the terms of the agreement, or have

at all times been ready and willing to do so, and have only been deterred therefrom by the acts of Johnston, they are entitled to have specific performance in delivery of the amount of the crop so agreed to be delivered.

6. Another point is made—that the complaint does not show that Johnston owned the land upon which the hops were grown, or held it under a lease, so as to give him a potential interest in the crop produced. But the reasonable inference is that he had it rented. The agreement shows that it was owned by Frank and Melane Chappelle and Peter Deltaur, and Johnston must have acquired some right from them to cultivate it—presumably by lease.

7. And still another—that the complaint does not allege that hops of the kind were grown or owned by the defendant Johnston. If, however, the plaintiffs are willing to accept the hops he has produced as of the quality and condition agreed upon, the defendants cannot be heard to complain.

In view of these considerations, the decree of the trial court will be reversed, the demurrer overruled, and the cause remanded for such further proceedings as may seem proper.                                    REVERSED.

---

Decided 13 June; rehearing denied 3 October, 1904.