THE MANCHESTER PAPER COMPANY, Appellant, *v.* JACOB R. MOORE, as Administrator, etc., Respondent.

Where a vendor of goods renders accounts to the purchaser periodically and the latter, after examination, retains them without objection, they constitute accounts stated and can only be opened and investigated upon proof of fraud or mistake.

Where goods were delivered under a contract by which the purchaser agreed to pay the "ruling market rates," and it appeared there were two market rates, one for goods of the kind bought of importers and another for them as sold by jobbers, *held*, it was competent to give in evidence the conversation of the parties and the surrounding circumstances for the purpose of showing which of the two was intended by the parties.

(Argued January 27, 1887; decided March 1, 1887.)

THE following is the *mem.* of opinion in this action:

"The accounts rendered monthly during four years by Jessup and Moore to the plaintiff, and after examination retained without objection constituted accounts stated and could only be opened and investigated upon proof of fraud or mistake. The plaintiff evidently recognized this feature of the situation, for the complaint expressly charges fraud or mistake in the rendition of the accounts, and the denial of the defendant put that issue into the case. The items

assailed as thus fraudulent or mistaken, were the chemicals furnished at the prices charged, and the computations of interest. The contract between the parties was embodied in a letter written by the defendants, referring to previous conversations, and purporting to frame their meaning into the terms of a written agreement. Among those terms it was specified that the supplies for the plaintiff's paper mill were to be furnished by the defendants at the "ruling market rates." The evidence discloses that the market rates for chemicals bought of importers were a fraction below the market rates for the same goods as sold by jobbers among the other supplies necessary to the manufacture of paper. The fact thus disclosed raised a latent ambiguity in the language of the written contract, and opened the inquiry which of the two market rates was meant or intended by the terms of the contract. The previous conversations of the parties tending to show in what sense the subsequent words as written were understood and bearing upon the issue of fraud between the parties, only to be investigated by a complete survey of all that occurred relating to the transaction, were admissible in evidence. When these conversations were first offered, the defendant objected upon the ground that the terms of the writing could not be varied or contradicted by parol proof. The court expressly declined to receive the evidence for any such purpose. The defendant conceded, by the form of his objection, in which he insisted that the question asked 'should be confined to the explanation of some phrase in the written contracts' that so much 'of the conversation as tended to such an explanation was admissible. The evidence thereafter given did not transgress this limitation. It exposed the situation of the parties, the surrounding circumstances, the characteristics of the business conducted by each, their relative needs and modes of action, thus enabling the court to read the instrument from the standpoint of the parties themselves. That conversation developed that by ruling market rates the parties meant and intended the jobbers rates as established by those who, like the defendants, were engaged in furnishing papermaker's supplies generally and of all kinds, and not the

importer's rates for chemicals alone, and showed further that the defendants, in charging jobber's rates were guilty of no fraud, but conforming to an understood and expressed intention. We think, therefore, that no error was committed in admitting the evidence objected to, nor in holding that the rates charged were in conformity to the terms of the contract and not fraudulent or mistaken. In *Dent* v. *N. A. Steamship Co.* (49 N. Y. 390), the offer rejected was to show the prior parol agreement of the parties. The effort was to substitute the verbal language for the written language of the contract which, of course, was inadmissible. Facts existing, it was said, might be shown in aid of interpreting the written words, but not different language as constituting the agreement. In the present case the accounts stated conclusively interpreted the instrument unless they were fraudulent or mistaken, and upon that issue all that was said and done leading up to the written contracts and tending to establish the absence of fraud in the charges made was certainly admissible.

" The same thing is true as to the manner of computing interest. It is proved that the defendants showed and carefully explained to the superintendent of plaintiff their interest computations with their own mill and their mode of charging the same as an illustration of the manner in which they proposed to conduct the business, to which the superintendent assented. These computations appeared upon fifty-four different accounts running through the entire business relation of the parties, and the finding of the referee that such accounts were neither fraudulent nor mistaken, leaves them binding upon the parties.

" The judgment should be affirmed, with costs."

*Henry G. Burnett* for appellant.

*M. W. Divine* for respondent.

Finch, J., reads *mem.* for affirmance.
All concur.
Judgment affirmed.