### WATTS v. WESTON et al.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

#### No. 111.

1. DAMAGES—BREACH OF CONTRACT SUBJECT TO FURTHER AGREEMENT.

A contract for the sale of the entire output of a colliery for more than 20 years provided that the price should be agreed upon from month to month by the parties. *Held* that, on a refusal to deliver such output, in the absence of any further agreement as to price or of any means of determining what price the contract required, the damages from such refusal could not be ascertained, and nominal damages only were recoverable.

2. APPEAL—DISCRETION OF TRIAL COURT—AMENDMENT.

In an action on a guaranty of performance of a contract, a refusal to allow an amendment of the complaint, setting up a modification of the contract originally declared upon, is within the discretion of the trial court, and will not be reviewed.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by James R. Watts against Walter Weston and Alfred J. Weston on a guaranty. The circuit court directed a verdict for plaintiff for six cents damages. Plaintiff brought error.

Treadwell Cleveland, for plaintiff in error.

Martin J. Keogh, for defendants in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The complaint alleges that by certain agreements and conveyances therein set forth one Caleb B. Knevals had in 1871 become the trustee of the Primrose colliery, in Schuylkill county, Pa., with full control of its business, and the mining, transporting, and selling of its coal, until June 14, 1901. That on or about June 25, 1880, Knevals, as such trustee, entered into a written agreement with the firm of Caldwell, Weston & Co.,

doing business in the city of New York, engaging to consign and deliver to said firm, their successor, successors, or assigns, the entire output of the Primrose colliery until June 1, 1901. The agreement provided, as the complaint alleges, that "they, the said Caldwell, Weston & Co., their successor or successors or assigns, should be the exclusive agents, and have full control of the entire production of coal that should at any time be mined by the said Knevals, trustee, or the said Primrose colliery, during the said period, and that such coal should be sold to the said Caldwell, Weston & Co., their successor or successors or assigns, at a price to be agreed upon from month to month, on or about the first of each month, by said Caleb Knevals, trustee, or the Primrose colliery, and the said Caldwell, Weston & Co., their successor or successors or assigns." Advances were to be made upon coal so mined, as soon as notice of shipment from the colliery should be received, to an amount not exceeding the purchase price per ton agreed upon. The firm aforesaid continued in business until December 31, 1882, when it was succeeded by the firm of Caldwell, Weston Bros. & Watts, which last-named firm was itself succeeded December 31, 1882, by the firm of Weston Bros. & Watts, composed of the defendants and the plaintiff. During all this time it is averred that the contract was carried out, and the entire product consigned to the New York firm. The complaint then avers that the firm of Weston Bros. & Watts continued in the coal business until on or about January 10, 1885, and during the whole period of its existence continued in the performance of the said contract with Knevals and the colliery. That on or about January 10, 1885, it was duly dissolved, and was succeeded by the firm of James R. Watts & Co., composed of the plaintiff and one Adler, to which firm the said contract and all rights and causes of action thereunder were duly assigned. That the firm of James R. Watts & Co. continued in business until September 2, 1885, when it was dissolved, and all its property transferred to plaintiff; and that said firm of James R. Watts & Co. continued in the due performance of the said contract until about the month of March, 1885, when Knevals, as trustee, and the Primrose colliery, ceased and refused, and have ever since so refused, to consign and deliver to the said firm any of the output thereof, by reason of which refusal and failure to perform the contract the firm of James R. Watts & Co. and the plaintiff suffered great loss and damage. It is further averred in the complaint that on or about January 12, 1885 (the date of the dissolution of the firm of Weston Bros. & Watts), the defendants "jointly and severally, duly and for a valuable consideration, guarantied and agreed in writing to indemnify and save harmless the plaintiff, his legal representatives or assigns, against all loss or damage which might arise from or by reason of any default or breach by the said Caleb B. Knevals, trustee, or the said Primrose colliery, from any cause whatever, to fully carry out the said agreement dated June 25, 1880, to the end of the term." Upon this contract of guaranty, plaintiff demanded judgment against defendants for his damages from the breach of the agreement of

June 25, 1880. The action was tried before a jury, and at the close of plaintiff's case the court, although satisfied that the averments of the complaint as to the transactions above set forth had been fully proved, directed a verdict in favor of the plaintiff for six cents only. To such disposition of the case exception was duly taken, and the direction of such a verdict is assigned as error.

In our opinion, the plaintiff was not entitled to recover any but nominal damages. The agreement of June 25, 1880, bound Knevals and the colliery only to sell the New York firm coal at a price to be agreed upon between the parties from month to month. The profits of the firm would manifestly be the difference between the price thus fixed, plus such expenses as they might be put to, and the price they might be able to obtain for the coal in the New York market. As the price to be paid the colliery was left wholly unsettled by the contract, and could be made certain only by further agreement of the parties from time to time, there is nothing, in the absence of such further agreement, with which to compare the market price at which coal, if shipped, could have been sold by the firm, and thus determine the profits which might have been lost by a refusal to sell at all. Not only is the contract uncertain as to the price to be paid by the firm, but it is not by its terms capable of being made certain either by reference to some umpire in case of a disagreement, or by providing that in the absence of an agreement it should be taken at the market price. Nor is there sufficient in the evidence to warrant a finding that the parties had practically so interpreted it as to dispense with the successive agreements as to price for which it provides. No doubt, in figuring for a coming month, both sides naturally enough took the market price of coal in the preceding months as a basis; both also took into consideration the tendency of the market for the future; but the important fact as to practical interpretation is that they did in fact from time to time agree upon the price. Neither seems ever to have acted upon the assumption that such price was to be fixed otherwise than with the concurrence of both. Moreover, it is difficult to see how, under the contract, there could be, as the plaintiff contends, any "market price" for Primrose coal "at the colliery." A market implies competition, and, if the entire output was to be turned over for 30 years exclusively to a single customer, it is quite apparent that unless some control over the price was reserved to the colliery it would be entirely at the mercy of the customer, who might fix the market at the mines by the price it was willing to pay. Nor is it to be supposed that the price to be paid was the market price of coal of this kind in New York, less expenses of transportation and sale. In the absence of a selling commission,—and the contract provides for none,— this would leave no profit to the consignees. We find nothing in the case from which a jury could determine what price the contract required plaintiff's firm to pay during any month not covered by an agreement as to price, and without that element the damages resulting from a failure to sell them coal are not susceptible of adjustment.

A further assignment of error is to the refusal of the circuit court to allow plaintiff to amend his complaint. The amendment asked for was as follows:

"That on or about November 12, 1884, the said last-mentioned contract [that of June 25, 1880] was, at the request of Caleb B. Knevals, trustee, and with the consent of Weston Bros. and Watts, to whom the said contract had been duly assigned by mesne assignments from Caldwell, Weston & Co., modified by providing that the said Weston Bros. & Watts should take the entire output of the Primrose colliery and sell the same at a certain commission upon each ton, namely, at 15 cents a ton for pea and lump coal, and 20 cents for all other sizes; and that under said contract, as modified, the said Caleb B. Knevals, trustee, and the said Weston Bros. & Watts continued to conduct the business aforesaid."

There was in evidence a letter from Knevals proposing,—in fact, insisting upon,— such a modification, and some proof tending to show that about the time of its dissolution the firm of Weston Bros. & Watts had rendered one or more statements of account on some such basis. Manifestly, if the agreement between the colliery and the New York house secured the latter a fixed sum on each ton of coal sold, the difficulty as to proof of damages in the case of its breach would be largely removed.

Motions to amend the pleadings upon the trial are within the discretion of the trial judge, who is more fully informed as to all the attendant circumstances, and can best determine whether amendment at that stage of the case would be consistent with the meting out of equal justice to both sides. Such discretion is not as a rule the subject of review, but counsel for appellant correctly states the exception to the rule, namely, that when the record plainly shows that the exercise of discretion was "wholly unreasonable" it will be reviewed on appeal or writ of error. But in the case at bar the refusal was very far from being "wholly unreasonable." To have allowed the amendment would have been to substitute an entirely new cause of action in the place of the one sued upon. And this, too, in an action against guarantors, whose written contract of guaranty refers solely to the agreement originally declared upon, incorporating it into the contract of guaranty with no modification in its terms, and who were brought into court to answer for default only as to the particular form of agreement to which their contract referred.

The judgment of the circuit court is affirmed.