(92 Hun, 546.)

### BEEMER v. PACKARD et al.

(Supreme Court, General Term, Fifth Department. December 28, 1895.)

PAROL EVIDENCE—AMBIGUOUS WRITING.

> Where a purchaser agreed to pay for the property purchased a certain sum in cash, or to pay the same amount of debts of the vendor, and it does not appear definitely by the writing what particular obligations it was intended that the purchaser should pay, parol evidence is admissible to identify such obligations.

Appeal from judgment on report of referee.

Action by Jefferson H. Beemer against Warren Packard and others, impleaded with William M. Hunter, to recover on an alleged agreement by defendants to pay certain obligations of the Randolph Lumber Company, of which plaintiff was a creditor. There was a judgment in favor of plaintiff, and defendants appeal. Affirmed.

The complaint alleged that defendant purchased all the property of the Randolph Lumber Company, and agreed to pay, as the purchase price thereof, $30,000 in cash, or to discharge all the obligations of said lumber company. Defendants denied that they agreed to pay all of the indebtedness of the lumber company. They also denied that plaintiff's claim was one of the debts which they agreed to pay, and alleged that they agreed to pay, as the purchase price of the property, $30,000 in cash, or in obligations owing by the said lumber company, and that they did pay or cause to be paid said sum, with the exception of the amount of a lien on the property purchased. The portion of the contract in regard to the consideration of the purchase was that defendants would pay "the sum of $30,000 in the manner following, to wit, in cash or obligations owing by said Randolph Lumber Company, in connection with the property and business heretofore done at this point, or that may be done thereafter."

The cause was referred to Clarence A. Farnum, Esq., as referee, to hear and determine, and his opinion is as follows:

The defendants urged upon the trial of the issues herein that they promised to pay to the Randolph Lumber Company, for the transfer of the properties to them, December 17, 1891, $30,000 in cash, or $30,000 in the obligations owing by the Randolph Lumber Company, and that there is no privity between this plaintiff and the defendants, and that the action cannot be maintained; that their promise was to the Randolph Lumber Company, and not for the benefit of this plaintiff, or any other person. Against the defendants' objection, evidence was given showing the situation and surroundings of the parties at the time the written agreement was made. This evidence was received, not for the purpose of changing or modifying the written agreement made by the parties, but to place the court, so far as possible, in the situation of the parties when they entered into the agreement, that it might determine what the parties sought to do. It is impossible to say, from an inspection of the writing, that the promise to pay "in cash or obligations owing by said Randolph Lumber Company" is so definite or certain, or the meaning is so certain, that one thing only can be meant. The defendants urge that they have the option to pay in cash or obligations of the Randolph Lumber Company. If so, they have not exercised that part of it, nor attempted to exercise that part, by paying in cash, for they have not paid the Randolph Lumber Company a dollar in cash. Then, if the defendants are to or may satisfy their part of the agreement by paying the obligations of the Randolph Lumber Company, it does not appear so definitely by the writing but that evidence of the surrounding circumstances may be given to show what particular obligations, if any, were mentioned, and would satisfy their agreement. It appears that, at the time this writing was made, the Warren Packard Company and G. W. Wood's Sons had indorsed largely for the Randolph Lumber Company, and then had claims against the company of $27,000 on account of such indorsements, including the amount unpaid on an executory contract for the

purchase of timber land, and that the indorsers had an assignment of the land contract for the purchase of the timber lands, upon which the mills were erected, but the possession of the property was in the Randolph Lumber Company. For some reason the indorsers desired to have the' possession of this property, and, in order to get it, they agreed to pay $30,000, $27,000 of which, including the amount unpaid on the land contract, was in obligations of the Randolph Lumber Company; upon which they were liable as indorsers. William M. Hunter, representing the Randolph Lumber Company, knew he was parting with the possession of all the available assets of his company, and urged he could not do this, unless $3,000' of obligations of his company, held at Randolph, N. Y., incurred for materials which went into this plant, should be paid by the defendants. The defendants agreed to pay these obligations, amounting to $3,000, of which plaintiff's claim is a part, if he would make such a transfer of possession, and, relying upon it, he consented to pass the possession of his property to the defendants, and the writing was then signed by him and the other defendants.

The evidence admitted does not tend to establish any fact changing the contract entered into, nor to enlarge the liability of the defendants. It was offered for the purpose of showing that of such obligations $3,000 of them were held by Randolph parties, and must be paid by the defendants. The defendants contend that they have paid $30,000 of obligations of the Randolph Lumber Company, and should be relieved from further payment. Their agreement was that of this sum $3,000 of it should be paid to the Randolph parties, and they have failed to carry out that part of their agreement. It can make no difference how large an amount of the general obligations of the Randolph Lumber Company has been paid, if the ones they expressly agreed to pay still remain unpaid. I think parol evidence of the situation of the parties at the time this writing was made was competent.

In Bank v. Strever, 18 N. Y. 502, the note sued upon was left with the bank as collateral security "for all liabilities incurred," etc., and the court, in speaking of this writing, said: "The language of that memorandum is as follows: 'The above note is left as collateral security for all liabilities incurred by Isaac S. Doane or Doane & Hoysradt to the Agawam Bank.' Now, it is true that upon a strict grammatical construction of these terms they would be held to embrace only liabilities which had been already incurred. The word 'incurred' being in the past tense, when used without other words to modify its meaning, would, in strictness, relate exclusively to past transactions. Were this memorandum, therefore, to be construed by itself, without the aid of any extrinsic fact or circumstance whatever, I am inclined to think the interpretation contended for by the appellants' counsel the one which should be adopted. * * * But its meaning can hardly be regarded as so entirely clear and unequivocal as to exclude all aid from the circumstances surrounding the parties at the time of entering into the contract. * * * It was proper, therefore, upon the trial, to resort to evidence of the attending circumstances, to assist in ascertaining the meaning and intention of the parties."

In Thorington v. Smith, 8 Wall. 1, it was held that, where a contract was made during the late Rebellion in one of the insurgent states, and provided for the payment of $45,000, the defendant was permitted to show that it was meant that this sum should be paid in Confederate notes. Chief Justice Chase, in writing the opinion of the court, said: "Such evidence does not modify or alter the contract. It simply explains an ambiguity, which, under the general rules of evidence, may be removed by parol evidence."

So in Paper Co. v. Moore, 104 N. Y. 680, 10 N. E. 861, it was held that where goods were delivered under an agreement by which the buyer agreed to pay the "ruling market rates," and it appeared there were two market rates,—one for goods of the kind bought by importers, and another for them as sold by jobbers,—evidence of conversations of the parties and the surrounding circumstances, for the purpose of showing which of the two was intended, was competent.

In Goodrich v. Stevens, 5 Lans. 230, the defendant, by an instrument in writing, "bought of H. P. Smith his crop of flax, 200,000 pounds." The trial court held that the contract bound Smith to deliver to the defendant 200,000

pounds of flax of his own raising, that the contract was clear and unambiguous in its terms, and not susceptible of change by proof of the negotiations which preceded it, and that the plaintiff could not recover for any less amount, and nonsuited the plaintiff; and the court, upon appeal, held that the words in question would not bear so inflexible a meaning as to exclude proof of extrinsic circumstances to aid in their construction, and reversed the ruling below.

A like view was taken in a similar question determined in Walrath v. Thompson, 4 Hill, 200.

Other cases might be cited illustrating the rule, but the doctrine laid down in them is elementary, and finds approval in 1 Greenl. Ev. §§ 288, 288a; Tayl. Ev. §§ 1194, 1198; Reyn. Steph. Ev. art. 91; Browne, Par. Ev. pp. 179–190, § 53; Id. pp. 190–195, § 54.

Numerous decisions have been cited by counsel for the defendants as authorities for the proposition that the promise made by the defendants, if any, would not permit the plaintiff to maintain an action upon it. It is often difficult to determine whether a promise is made for the benefit of a third person, and our decisions are not all in harmony. In this case the question turns upon a construction of the agreement, whether it was a contract of indemnity to the Randolph Lumber Company, or an agreement to pay the Randolph liabilities of the Randolph Lumber Company. If the former, of course, the action cannot be sustained; if the latter, it may. If parol evidence be competent to establish the promise, or rather to aid the court in determining, from the writing and surrounding circumstances, if one was made,—and I have held it is,—then the promise was for the benefit of the parties holding this class of obligations. A long line of cases running from Schemerhorn v. Vanderheyden, 1 Johns. 139, to Townsend v. Rackham, 143 N. Y. 516, 38 N. E. 731, illustrate the doctrine that, where a promise is made by one person to another, for the benefit of a third person, and the promisee is obligated to such third person, an action may be maintained by such third person upon the promise.

I must hold that the plaintiff is entitled to recover against the defendants the amount claimed in the complaint.

Argued before LEWIS, BRADLEY, WARD, and ADAMS, JJ.

James G. Johnson, for appellants.

Henderson & Wentworth, for respondent.

PER CURIAM.    Judgment affirmed, on opinion of the referee, with costs.

---

OEHLER et al. v. NEW YORK EL. R. CO. et al.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. ASSIGNMENT—CAUSE OF ACTION FOR FUTURE TRESPASS.

Where plaintiff, pending an action for injuries caused by the construction and operation of defendants' elevated railroad in front of plaintiff's premises, conveyed the premises, but reserved his cause of action for the past, permanent, and fee damages, such reservation does not amount to an assignment to plaintiff of his grantee's claim against defendants for loss of rents during the grantee's ownership of the premises.

2. EQUITY—INCIDENTAL RIGHT TO RECOVER DAMAGES.

Plaintiff in such case, by the conveyance, parted with his right to equitable relief, and a claim for loss of rents accruing after the conveyance and assigned to him cannot be recovered therein.

Appeal from special term, New York county.

Action by Christian L. Oehler and others against the New York Elevated Railroad Company and another to enjoin the operation of defendant's elevated railroad in front of plaintiffs' premises, No.