Argued March 9, decided April 5, 1910.

## OLYMPIA BOTTLING WORKS v. OYLMPIA BREWING CO.

[107 Pac. 969.]

CONTRACTS—OPTION AGREEMENT—MUTUALITY.

1. An option agreement, executed on proper consideration, is not lacking in mutuality.

CONTRACTS—REQUISITES—DEFINITENESS.

2. Less particularity is required in the terms of an agreement to support an action for damages than for a suit for specific performance.

PRINCIPAL AND AGENT—CONTRACT—OPTION AGREEMENT—EXTENSION—
REQUISITES.

3. Where the right of an agent, for the exclusive sale of an article within a specified territory for a fixed period, to continue the agency for another fixed period formed an important part of the consideration for the fixed period, and the contract was fully executed, and the consideration thereby fully paid for the fixed period, more latitude should be allowed in determining whether the optional provision was sufficient than where the option was merely executory, or partly executory.

PRINCIPAL AND AGENT—CONTRACT OF AGENCY—OPTION AGREEMENT—
DEFINITENESS.

4. A contract, making one the sole agent of a brewery for the sale of its beer in specified territory for five years, which stipulates that at the close of the five years the agent shall have the option of continuing the agency for another five years, subject to the revision of the prices of beer, not to exceed the prices ruling at that time, contains a sufficiently specific option to constitute an enforceable agreement, and the brewery must agree on a revision of the prices, on the agent electing to continue the agency; and, where it refuses to do so, it does so at its peril, and the matter must then be determined by the proof of the price ruling at the time.

PRINCIPAL AND AGENT—CONTRACT OF AGENCY—OPTION AGREEMENT—
BREACH—RIGHT OF ACTION.

5. Where a brewery, making one its sole agent for the sale of its beer in specified territory for five years, with the option of the agent

to continue the agency for another five years, subject to a revision of the prices of beer, not to exceed the prices ruling at that time, refused to consent to a revision of the prices, on the agent giving notice of his election to continue the agreement under the option, and refused to recognize the rights of the agent; the agent, if unable to make such a showing as would entitle him to equitable relief, could sue for damages for breach of the option agreement.

CONTRACTS—CONSTRUCTION.

6. Where a contract is susceptible of different interpretations, one or more of which would enable it to stand, and others which might vitiate it, the construction giving effect to all its parts, and sustaining the contract and carrying out the evident intent of the parties, will prevail.

PRINCIPAL AND AGENT—CONTRACT OF AGENCY—CONSTRUCTION.

7. Where a brewery, making one its sole selling agent within described territory for a fixed period, with the option of the agent to continue the agency for another period, subject to a revision of the prices of beer, not to exceed the prices ruling at that time, received notice of the agent's election to continue the agency, and then refused to consent to a revision, it was discretionary with the agent whether he would act on the assumption that the brewery was satisfied with the prices specified in the contract for the fixed period, or demand a change in conformity with the then ruling prices, for the effect of the option was to bind the parties to confer and make such revision of the prices as might be deemed advisable, or in the absence thereof that the ruling prices should prevail.

PRINCIPAL AND AGENT—CONTRACT OF AGENCY—OPTION—NOTICE OF EXERCISE.

8. Where a brewery, making one its sole selling agent within described territory for a fixed period, with the option of the agent to continue the agency for another period, subject to a revision of the prices of beer, not to exceed the then ruling prices, refused to recognize the rights of the agent under the option, notwithstanding his election to continue the agency, the agent, giving notice of his election to continue the agency, was not required to notify the brewery of his intent to insist on the ruling prices.

EVIDENCE—PAROL EVIDENCE—LATENT AMBIGUITY.

9. A contract making one the sole selling agent of a brewery for a fixed period, with the option of the agent to continue the agency for another period, subject to the revision of prices of beer, not to exceed the prices ruling at that time, contains a latent ambiguity because the reference to the ruling prices may refer to the wholesale market prices, or to prices allowed to similar agencies, and parol evidence was admissible to show the intention of the parties.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE KING.

Plaintiff by this action demands $45,000 damages for an alleged breach of a written contract, entered into January 25, 1902, by and between the defendant, the Capital Brewing Company of Olympia, Washington (sub-

sequently changed to the Olympia Brewing Company), as party of the first part, and the plaintiff, the Olympia Bottling Works, as party of the second part, wherein the latter was made the sole agent of the first party for the sale of beer brewed by it in Oregon and the southern part of Washington, the period of which agency was fixed at five years, with the privilege granted to the second party of extending it in a qualified form for an additional term of the same length. The contract provided in detail for the manner of conducting the business, the price of beer per keg, barrel, and other quantities in which to be sold, etc., including the manner of delivery, expense thereof, and other matters pertaining to the conduct of the business for the company. The clause of the contract, giving rise to this controversy, reads:

"At the close of the five-year period covered hereby, the second party shall have the option of continuing this agency for another five years, but the prices of beer shall be revised, but not to exceed the prices ruling at that time. This agreement to take effect on the first day of March, 1902."

On March 1, 1902, the date when, by the terms of the agreement it became effective, the parties entered upon the performance of the conditions of the contract, and continued operation thereunder until March 1, 1907, but from time to time modified the terms of the agency, respecting the price of beer, supplies to be furnished, and other details incidental to the business. The defendant company, about three months prior to the expiration of the first five-year period, notified plaintiff in writing to the effect that after March first of that year the business relations between plaintiff and defendant must cease. A few days later plaintiff wrote defendant, in part, as follows:

"The contract gives to ourselves, the party of the second part, the option of continuing this agency for another five years, but the price of beer shall be revised, but not

to exceed the prices ruling at that time.  We now formally notify you that we desire, in the exercise of our option, to continue the agency under the contract for the additional five years, and we are ready at any time that suits your convenience to discuss with you and agree upon such revision of prices as the contract contemplates. After five years of labor expended and money invested in contemplation of future rights, and after incurring obligations for the extended continuance in large amounts with your knowledge and approval, we cannot consent to this arbitrary repudiation of the contract on your part, resulting, as it would, in destroying in a moment, as far as we are concerned, the business we have built up and fostered."

An extended correspondence followed between the parties, in which each accused the other of unfair business dealings; the defendant, among other things, informing plaintiff: "The contract you refer to, and under which you claim, is null and void, and terminated a year ago by your own request and full knowledge."  On and after March 1, 1907, beer orders were given defendant as formerly, which orders defendant declined in any manner to recognize, resulting in this action.  At the trial plaintiff offered to prove a full compliance on its part with the terms of the option, including the giving of notice to defendant of its intent to exercise the option, all of which was excluded by the court.  No testimony was offered on behalf of defendant, and on request of its counsel a verdict was directed in its favor; hence this appeal.

REVERSED.

For appellant there was a brief over the names of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Alex Bernstein.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes* and *Mr. Samuel B. Huston,* with an oral argument by *Mr. Pipes.*

MR. JUSTICE KING delivered the opinion of the court.

MR. JUSTICE EAKIN dissenting.

1. No contention is made in this court respecting the compliance or noncompliance with the terms of the contract for the first five years, only the legal effect of the option clause in the contract being involved; and the breach complained of goes to the refusal by defendant to permit plaintiff to continue its agency thereunder for the additional time. The defense relied upon in this court, is that the contract, under which plaintiff sought to have its rights recognized, consisted merely of an "agreement to agree" to an option, the terms of which were to be fixed in the future and therefore unenforceable. This position necessarily fails to take into consideration that the option clause must be construed with the entire contract, and constitutes a part of the consideration by which plaintiff was induced to assume the agency for the first five-year period. The terms thereof were in writing, and plaintiff, having satisfactorily performed its part of the contract, paid thereby the full consideration for the option. And it is well settled that an optional agreement, executed upon proper consideration, is not lacking in mutuality, and is enforceable. 9 Cyc. 334; 21 Am. & Eng. Enc. Law (2 ed.) 929, 933; *House* v. *Jackson,* 24 Or. 89, 95 (32 Pac. 1027) ; *Clarno* v. *Grayson,* 30 Or. 111, 120 (46 Pac. 426) ; *Belch* v. *Miller,* 32 Mo. App. 387, 398; *Worthington* v. *Beeman,* 91 Fèd. 232, 234 (33 C. C. A. 475) ; *Seaver* v. *Thompson,* 189 Ill. 158 (59 N. E. 553) ; *Hayes* v. *O'Brien,* 149 Ill. 403, 407 (37 N. E. 73: 23 L. R. A. 555) ; *Hawralty* v. *Warren,* 18 N. J. Eq. 124 (90 Am. Dec. 613) ; *Hall* v. *Center,* 40 Cal. 63.

2. Less particularity is required in the terms of an agreement where, as in the case presented, the proceeding is not a suit in equity, or a suit for specific performance, but an action for damages. See *Harlow* v. *Ore-*

*gonian,* 45 Or. 520 (78 Pac. 737; *Harlow* v. *Oregonian,* 53 Or. 272 (100 Pac. 6), and cases above cited.

3. The point, then, for determination, and upon which the contest is here waged, is whether the terms by which the option is given are sufficient to constitute an agreement as they read, or amount merely to an "agreement to agree" *in futuro.* It is maintained by defendant that the provision for the continuance of the agency is made specifically to depend upon a revision of the prices for the beer to be furnished plaintiff, and that the prices shall be such as may be agreed upon, being thus merely an "agreement to agree." *United Press* v. *New York Press Co.,* 164 N. Y. 406 (58 N. E. 527: 53 L. R. A. 288), is especially relied upon as supporting this contention. The facts are not fully stated upon which the conclusion there is reached, but it would seem that the plaintiff had entered into a contract with the defendant, whereby the defendant agreed to receive "the said news report" from plaintiff therein, and to pay therefor "a sum not exceeding three hundred dollars during each and every week that said news report is received * * until the first day of January, in the year 1900." To this agreement it was further added that the defendant should have the right to receive the news report without interruption from and after the date named, and the plaintiff was to "continue to deliver the same if required * * at a price which shall be fair and equitable to both of the parties, provided that such price shall not be more than any other daily morning newspaper in the city of New York shall be required to pay * * for the same news report." The language thus used is more indefinite, and much more incapable of being made certain of oral proof than the option clause under consideration. The price was to be fixed from time to time by agreement, and limited in the first instance to $300 per week, and in the second by what was "fair and equitable," and not to exceed that paid by

other daily newspapers in that city; the latter limita-
tion, to some extent, being similar in principle to that
considered in *Hayes* v. *O'Brien,* 149 Ill. 403 (37 N. E. 73:
23 L. R. A. 555), in which the contract was held to be
mutual and binding. It is strongly intimated and sug-
gested in the opinion in the United Press Case that it
always becomes an important factor, whether the con-
tract is executed in whole or in part, or executory only;
and it is not clear from the brief statement of the con-
tract there involved whether either of the provisions
quoted constituted a part of the consideration for any
prior dealings between them. While in the case at bar,
taking the contract as a whole, it is manifest that the
right to continue the agency for the additional five-year
period constituted a very important part of the considera-
tion for the first five years' service, and the contract hav-
ing been fully executed, and the consideration thereby
fully paid for the first period, more latitude should be
allowed in determining whether the provision in the con-
tract, whereby the party paying such consideration was
to receive the benefit thereof, than in a case where the
option or contract is merely executory, or partly execu-
tory.

4. Again, under the view most favorable to defendant's
contention, the contract in that case, as to the first period
(1892 to 1900) under which the news was to be furnished
and upon which the option therein given was based, was
subject to the indefiniteness and uncertainty here urged
against the option paragraph only. Here the option has
for its basis an agreement free from ambiguity and un-
certainty; there both the "basis" and "option" are sub-
ject to the charge of "uncertainty." In other words, the
uncertainty here, if any, must be construed with the terms
of the entire instrument preceding it; while there, so far
as disclosed by the opinion, the language involved was
required either to stand or fall alone. We believe the

case not to be in point, although the first impression of the writer was otherwise; but, if the deduction to be made from the reasoning therein must have the effect claimed for it by the eminent counsel for respondent, it is not only against the decided weight of authority, but in conflict with the principles announced by the same court in *Manchester Paper Co.* v. *Moore,* 104 N. Y. 680 (10 N. E. 861), to which no reference is made. There the contract under consideration provided that the supplies for the plaintiff's paper mill were to be furnished by defendant at the "ruling market rates," and it was held competent to give in evidence the conversation of the parties, and all surrounding circumstances, for the purposes of determining what was meant thereby. Another case, and one in which the rule is carried farther than essential to a determination of this case, is *Daggett & Grave* v. *Johnson,* 49 Vt. 345, in which it appears the defendant had agreed to pay for a quantity of milk pans, "if satisfied with the pans," and it was held "that the defendant had no right to say arbitrarily, and without cause, that he was dissatisfied and would not pay for the pans. He must act honestly and in accordance with the reasonable expectation of the seller, as implied from the contract, its subject-matter, and surrounding circumstances." To the same effect, *Livesley* v. *Johnston,* 45 Or. 30, 43 (76 Pac. 13, 946: 65 L. R. A. 783: 106 Am. St. Rep. 647).

In *Worthington* v. *Beeman,* 91 Fed. 232, 33 C. C. A. 475, an option was given in the following language: "This agreement to continue to January 1, 1892, it being understood that you are to push the sale of these goods, and do all you can to further our interests, and, should you succeed in doing such a business as we may reasonably expect, then this agreement shall be renewed for two years more"—and it was held that this clause was not so indefinite or uncertain in its terms as to preclude an

action for damages after the refusal of the defendant to renew at the expiration of the first term, and that the amount of business which defendant could "reasonably expect" might be shown by parol. In *Watts* v. *Weston,* 62 Fed. 136 (10 C. C. A. 302), there was presented for adjudication a provision in the contract, with reference to the sale of coal, in which, among other things, it was provided that the coal should be sold to the party there named "at a price to be agreed upon from month to month." This agreement was held too indefinite and uncertain but suggested that, had there been some means of making the contract certain, it would have been adequate for the purposes intended; Judge LA COMBE observing: "Not only is the contract uncertain as to the price to be paid by the firm, but it is not by its terms capable of being made certain, either by reference to some umpire in case of a disagreement, or by providing that in the absence of an agreement it should be taken at the market price"—thus clearly implying that the words "market price" would have been sufficient to enable the party claiming under it to establish the same by parol.

Although not parallel as to the facts, the case of *Livesley* v. *Johnston,* 45 Or. 30, 43 (76 Pac. 13, 946: 65 L. R. A. 783: 106 Am. St. Rep. 647), is in point, so far as concerns the legal principles involved; and the rule there enunciated goes to a greater length than is insisted upon by appellant. In that case it was contended that the stipulation involved, to the effect that if the quality of the commodity purchased should be inferior to that expected, or not in condition as agreed upon, "according to the judgment" of the plaintiff therein or its agent, the plaintiff was not bound to accept it, thereby leaving the determination "subject to their mere will or caprice, thus nullifying their promise to purchase, and rendering it of no appreciable obligatory or binding effect upon them." But notwithstanding this peculiar, and apparently arbi-

trary, provision, the contract was held enforceable; Mr. Justice WOLVERTON observing: "The purchaser is conceded the exercise of his judgment, but he exercises it at his peril, and, if he rejects the commodity, which nevertheless comes up to the stipulated standard, he is yet bound for the purchase price, and the seller may recover it of him on proof that he has complied with the terms of the sale." Applying the same reasoning here, the defendant was not bound to agree upon a revision of the prices of the beer to be delivered to plaintiff; but, if it refused to comply with this provision in the option, it did so at its peril, and left the matter to be determined entirely by what might prove to be the price ruling at the time, regardless of consequences.

5. In some respects the principles here presented are analogous to those involved in *Harlow* v. *Oregonian,* 53 Or. 272 (100 Pac. 6); *Harlow* v. *Oregonian,* 45 Or. 520 (78 Pac. 737), where it was provided that in case either party demanded a dissolution, or a cancellation of the agency, and both could not agree upon the proper method therefor, each should appoint a man for that purpose; and, in the event of the failure of agreement of such two arbitrators, a third man should be appointed, whose decision would be binding. Here was an "agreement to agree" in the future, if practicable; but, if no agreement could be reached, a method was provided for the determination of the controversy. The dissolution being discretionary with either party, it was finally demanded, and on failure to agree, the method mentioned was insisted upon; but the defendant therein refused to submit thereto, as did the defendant here refuse to submit to the "ruling price," as the method of ascertaining the prices to be charged, and it was held that an action for damages against the defaulting party was maintainable. Among other authorities sustaining the foregoing views are *Beemer* v. *Packard,* 92 Hun. 546, 552 (38 N. Y. Supp. 1045); *Mayer* v. *Neth-*

*ersole,* 71 App. Div. 383 (75 N. Y. Supp. 987) ; *Hayden* v. *National Bank,* 130 N. Y. 146 (29 N. E. 143) ; *Miller* v. *Kendig,* 55 Iowa 174 (7 N. W. 500) ; *Kaufman Bros.* v. *Farley Mfg. Co.,* 78 Iowa, 679 (43 N. W. 612: 16 Am. St. Rep. 462) ; *Walsh* v. *Myers,* 92 Wis. 397 (66 N. W. 250) ; *Sergeant* v. *Dwyer,* 44 Minn. 309 (46 N. W. 444) ; *Armstrong* v. *Andrews,* 109 Mich. 537 (67 N. W. 567).; *Maydwell* v. *Rogers L. Co.,* 159 Fed. 930 (87 C. C. A. 110) ; *Mebius* v. *Mills,* 150 Cal. 229 (88 Pac. 917) ; *Pierce* v. *Tenn. C. & I. Co.,* 110 Ala. 533 (19 South. 22) ; *Parker* v. *Pettit,* 43 N. J. Law, 513; *Hayes* v. *O'Brien,* 149 Ill. 403 (37 N. E. 73: 23 L. R. A. 555). Now, in the option here presented, the language used reads: "Prices of beer shall be revised, but not exceed the prices ruling at that time." The method thus provided for adjusting their difference, if any, was to be determined by the prices then prevailing. It is evident that it was contemplated that the prices at the end of five years would probably need revision; that such revision would inure to the benefit of the optionor or of the optionee, or both, and to accomplish this they reserved the right to make a revision, which, under some circumstances it was doubtless realized might have been above the prices specified in the contract for the first period, while under other conditions prices below those specified might have proved more advantageous. The reason for this is manifest; for, either by reason of the increase of defendant's business throughout the country, or for other causes, a reduction in price, although temporarily giving smaller profits, might have yielded to defendant company a greater income for the entire period, and thus have resulted beneficially to either or both of the parties. Moreover, it furnished to defendant a lever by which plaintiff, by more favorable prices, might be induced to continue its services for the additional five-year term; while, on the other hand, if desirous of ridding itself of the agency, by means of a higher revision under

the limitation provided, it might have had the effect of causing defendant not to exercise the option. Although, no doubt, recognizing the possible advantages to the optioner, the optionee appears to have been willing to run the risk, so long as protected by the clause ."not exceed the prices ruling at that time." When, therefore, the exercise of the option was decided upon, it was proper that defendant be notified; for, in order to ascertain whether it was desirable to invoke the option clause in its behalf the agent, or optionee, was entitled to know what revision, if any, would be made, whether the prices of the commodity to be handled were to be reduced, or whether prices would be demanded which plaintiff might deem above the ruling price, and, if so, to have the differences adjusted by such proceedings as would prove essential to a determination of the effect of such limitation. And when plaintiff notified defendant of its intention to exercise the option, and defendant refused to recognize its rights, under any circumstances, to proceed, plaintiff was, if unable to make such a showing as would entitle it to equitable relief, left to the remedy pursued herein: *Harlow* v. *Oregonian,* 45 Or. 520 (78 Pac. 737) ; *Harlow* v. *Oregonian,* 53 Or. 272 (100 Pac. 6).

6. The most that may be said in support of defendant's contention is that the language used in the option clause is susceptible of two or more constructions, one of which is that it merely intended to provide that, in the event an amicable agreement, concerning the revision of prices, could not be had, the agency, and contract covering it, regardless of such failure to agree, continued for another five-year period, and the "ruling price" should prevail, which ruling price might be less, but not greater, than that named in the contract for the first five-year period; the other, that if such could not be accomplished by agreement, the "ruling price," whether higher or lower than that specified in the contract, should prevail; while a

third interpretation would be that forcibly presented by counsel for respondent, to the effect that it was merely an "agreement to agree," and therefore void. In this connection we must keep in mind the settled rule of construction that, where a contract is susceptible of different interpretations, one or more of which would enable it to stand, and others which might vitiate the instrument, the construction giving effect to all its parts, and sustaining the contract and carrying out the evident intention of the parties thereto, will prevail, rather than the construction nullifying the instrument: *Hildebrand* v. *Bloodsworth,* 12 Or. 75, 80 (6 Pac. 233) ; *Arment* v. *Yamhill County,* 28 Or. 474, 479 (43 Pac. 653) ; *Boykin* v. *Bank of Mobile,* 72 Ala. 262 (47 Am. Rep. 408) ; *Pressed Steel Car Co.* v. *Eastern Ry. Co.,* 121 Fed. 609 (57 C. C. A. 635).

7. Now, invoking this well-known canon of construction, the effect of the clause of the option under consideration was to say that, when the five-year period expired, all parties concerned would confer and make such revision of the prices as might be deemed advisable, and that if, on receipt by the optionor of notice of an intention on the part of the optionee to exercise the option, no agreement could be reached, the then ruling prices should prevail. When, therefore, the optionor received the notice and refused to consent to a revision, it became discretionary with the optionee whether it should act upon the assumption that the optionor was satisfied with the prices specified in the contract for the first period, or demand a change in conformity with the then ruling prices.

8. Defendant was notified of plaintiff's intention to exercise the option, and not only failed to meet for such conference, but absolutely refused to recognize plaintiff as having any rights under the contract after March 1, 1907. This left the agreement, in effect, as if the clause had read:

"In consideration of a compliance by the Olympia Bottling Works with the terms of the foregoing instrument,

said company shall have the privilege of continuing the agency for five years after March 1, 1902, during which time all the terms of the foregoing contract shall remain in full force and effect, subject only to a modification, if it shall be a modification, that the prices to. be paid for beer shall be the prices ruling at the close of the first, and beginning of the second, five-year period."

In this connection it is argued that, under any circumstances, it was incumbent upon the optionee to inform the optionor of its intent to insist upon the ruling price. Since this was stated in the option clause, of which the optionor's knowledge was equal to that of the optionee, it would seem that such notice was unnecessary; for the law does not require vain or useless things, and as the optionor notified the optionee that it would not, under any circumstances, permit the agency to continue, plaintiff was thereby relieved from any further duty in this respect. See *Livesley* 'v. *Krebs Hop Co.,* 107 Pac. 460, and authorities there collated on this feature.

9. The question as to what was meant by "prices ruling at that time," and also as to what the ruling prices on March 1, 1907, were, may be shown, for which purpose parol testimony is admissible. For, as to whether it had reference to the market price, or the price at which beer was disposed of at wholesale, or such prices as were allowed to similar agencies, does not appear from the contract. This raised, in the language of the option, a patent ambiguity, opening it to inquiry as to which should govern, or what was intended by the terms used, all of which was for the jury. See *Manchester Paper Co.* v. *Moore,* 104 N. Y. 680 (10 N. E. 861), and other authorities above cited.

For the errors complained of, the judgment is reversed, and a new trial ordered.                    REVERSED.

MR. JUSTICE EAKIN dissenting, holds that the clause in the agreement constituting the option in plaintiff's favor for the renewal does not fix the prices at which

the beer is to be furnished, nor determine any method by which they may be ascertained.  Therefore, when plaintiff notified defendant of its acceptance of the option, still there was no agreement between the parties upon which either could recover against the other.  The prices at which the goods were to be furnished was the subject of a future agreement, and each party had the right to a voice in the revision of the prices, the maximum not to exceed the ruling prices.  But plaintiff did not agree to pay the ruling prices.  A contract, to be enforceable, must fix the price of the goods, or fix a definite manner of determining it.  Beach, Contracts, §§ 72-78; 21 Am. & Eng. Enc. Law (2 ed.), 925.  Therefore, when plaintiff notified defendant that it accepted the option, still defendant had no remedy upon the contract, as plaintiff had not agreed to any price that it would pay  I believe that there is no exception to the rule that, if the terms of the option are so indefinite that upon acceptance by the vendee the vendor has no remedy upon it, it is void as to both.

"The parties must make their own agreement, and not leave it for the court to construct one for them."  9 Cyc. 248.

If by the acceptance of an option the obligations of both parties do not become fixed, and the remedies mutual, then there is no liability upon the part of either.  21 Am. & Eng. Enc. Law (2 ed.), 923-929.  Mutuality of the contract after acceptance is essential to its validity.  It is said in *Rude* v. *Levy,* 43 Colo. 482-483 (96 Pac. 560, 561: 127 Am. St. Rep. 123) :

"It is only when the vendee has made his election and complied, or, in good faith attempted to comply, with the terms of an option, and it has ceased to be an option, and has ripened into a mutually binding and mutually enforceable contract, that it becomes enforceable in equity by the vendee."

There is no obligation on the vendor to perform until the vendee has accpted the option, and its terms must be certain. . *Marsh* v. *Lott,* 8 Cal. App. 384 (97 Pac. 163.) These two principles are well illustrated in *Castle Creek Water Co.* v. *City of Aspen,* 146 Fed. 8 (76 C. C. A. 516; 8 Am. & Eng. Ann. Cas. 660) and in an exhaustive note at page 664. See, also, note to *Mier* v. *Hadden* (Mich.) 12 Am. & Eng. Ann. Cas. 90.