Argued December 5, 1919, affirmed January 27, 1920.

## BEALL *v.* FOSTER.

(186 Pac. 554.)

Patents—Agreement to Give Right to Sell on Terms to be Agreed on not a Contract.

1. An agreement to give right to dispose of patented article, the terms and conditions to be agreed on later by the parties, but to be in the "bounds of reason and on about the same basis as has been customary in similar deals before, by other people," does not amount to a contract; the minds of the parties not meeting on any specific proposition.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

The complaint says that in Portland, Oregon, on or about June 10, 1908, the parties made and entered into a writing which is thus set out at large:

"Portland, Oregon, June 10, 1908.

"Mr. C. A. Foster,

"Portland, Oregon.

"Dear Sir:

"Referring to our conversation of this date at the Sargent Hotel, will say that the following is my understanding of the conversation, and if it is your understanding as well, please sign the acceptance on the bottom of this letter:

"First: You agree to sell me an undivided one-half interest in and to all patents that you have applied for and may obtain on the nestable culvert and also any patents or improvements that you might hereinafter be interested in, directly or indirectly on this same style culvert, for a consideration of two thousand dollars ($2,000.00) to be paid by me to you at some convenient time, out of the money from sale of territory.

"Second: In addition to the above you agree to give me the exclusive right of disposing of the above described nestable culvert in the entire United States and such other foreign countries in which patents may be obtained, for the sale of the territory outright, shop rights or royalties, until the entire territory is all disposed of. The terms and conditions pertaining to this are to be agreed upon later by us, but are to be in the bounds of reason and on about the same basis as has been customary in similar deals before, by other people. Beall & Company to take such orders for this nestable culvert in competition with other nestable culverts now offered in the territory whenever it is necessary, and on which they are to be allowed the same commission as is allowed in their contract with the Security Vault & Metal Works, for the sale of the culvert. Such nestable culvert as they sell is to be manufactured by you at the Security Vault & Metal Works, at as low a price as it is possible, and in addition to that the Security Vault & Metal Works are to be paid a reasonable profit for the making of such culvert.

"All of the above conditions to date from this date. Believing that this is according to our talk, and is satisfactory to you, beg to remain,

　　　　　　　"Yours very truly,

　　　　　　　　　"JNO. S. BEALL.

"I hereby accept the above as correct.

　　　　　　　　　"C. A. FOSTER."

The plaintiff says he fully performed all of the conditions of that instrument on his part to be performed, and in substance declares that as a result of his doings the defendant received money, the exact amount of which is unknown but is alleged to be $9,500, and that "notwithstanding the plaintiff complied with all the requirements of the contract on his part to be done and performed, the defendant and the plaintiff failed to agree on the 'terms and conditions' referred to in said agreement, although said Beall was always willing to do so, and often requested the defendant so to do." He says, too, that the reasonable and customary compensation for such services is one half the amount the defendant received, "to wit, over the sum of $4,500." The plaintiff avers finally in substance that the true amount due from the defendant cannot be ascertained without an accounting between them, in consequence of which he has no plain, speedy or adequate remedy at law, and therefore prays for an accounting between the parties.

The answer is a specific denial of all the allegations of the complaint. The court made findings and a decree in favor of the defendant, dismissing the suit, and the plaintiff appeals.　　　　　　　　AFFIRMED.

For appellant there was a brief over the name of *Messrs. Sinnott & Adams,* with an oral argument by *Mr. R. B. Sinnott.*

For respondent there was a brief over the names of *Mr. Richard W. Montague* and *Mr. George I. Brooks,* with an oral argument by *Mr. Montague.*

BURNETT, J.—1. No question is raised about the first subdivision of the instrument quoted in the complaint. It appears in evidence that the defendant assigned to the plaintiff one half of the nestable culvert patent and that, acting together, they organized corporations in Washington and Montana, putting in the use of the patent in those state as one half of the capital stock subscribed by them and residents there took the other half in each instance. In Utah and California they operated together in the employment of an agent who effected sales of the patent right, upon which certain royalties were received and divided by the plaintiff and the defendant. It appears also that the defendant sold his stock in the Washington and Montana corporations for considerable sums of money.

It is noted in passing that the letter purports to be the plaintiff's understanding of a certain conversation. In addition to this the defendant signed the memorandum at the foot, "I hereby accept the above as correct." Taken by its four corners, this amounts to no more than a memorial of uncompleted negotiations thus far had between the parties. The kernel of the controversy is found in this excerpt from the second subdivision of the letter:

"The terms and conditions pertaining to this are to be agreed upon later by us but are to be in the bounds of reason and on about the same basis as has been customary in similar deals before, by other people."

Whether such language as this amounts to a contract or not, was considered by this court in *Holtz* v. *Olds,* 84 Or. 567 (164 Pac. 583, 1184), and it was there held that

an agreement to make a contract in the future is not binding unless all the terms and conditions are agreed upon and nothing is left to future negotiations.

It is substantially admitted in the argument that an agreement to agree does not constitute a contract. The reason for this is plain; for, unless the minds of two parties have met on the same proposition there can be no agreement. The question before us is not purely one of construing a contract. We are called upon to determine whether there was any contract at all. The language of the parties postpones agreement to a later date. In the face of their own words, we cannot say that their minds met at the time on any definite proposition. We cannot make for them a contract as of that date, when they themselves have said one was to be made thereafter and that, too, on terms not specified. The plaintiff is not seeking to recover on a *quantum meruit* for services rendered. He declares on a written instrument which he calls a contract and which he sets out *in haec verba*. His whole case is founded on the theory that on the date of that instrument he and the defendant made a complete contract which was then and there an enforcible compact. Their own words refute this theory and refer the close of negotiations to some indefinite later date. With the convention between the parties in this state of uncertainty, the plaintiff essays in effect to import into the so-called contract a stipulation not found there, and then to recover upon it as he would thus reform it. It is indeed true that that is certain which can be made certain, but for all that there must be a standard of certainty in contemplation by the parties. To say that the terms must be "in the bounds of reason and on about the same basis as has been customary in similar deals before, by other people," is not certain. The

conduct of the parties as disclosed by the evidence does not in the least indicate that either of them relied upon or considered the second clause of the contract as imposing any obligation.

Much reliance is placed by the plaintiff on the case of *Olympia Bottling Works* v. *Olympia Brewing Co.,* 56 Or. 87 (107 Pac. 969). In that instance the plaintiff had the contract for handling the beer manufactured by the defendant for some compensation described in the agreement. That instrument contained this clause:

"At the close of the five-year period covered hereby the second party shall have the option of continuing this agency for another five years, but the prices of the beer shall be revised, but not exceeding the prices for beer ruling at that time; this agreement to take place on the first day of March, 1902."

In substance, the decision of the court, Mr. Justice EAKIN dissenting, turned upon the principle that the phrase, "prices ruling at that time," meant the market prices, which could be established by competent evidence, so that the language quoted amounted to a contract *in praesenti,* providing an ascertainable standard as one of its terms, to operate in the future.

An examination of the precedents cited by the plaintiff shows that the instrument declared upon in each instance contained terms then agreed upon as a canon by which possible future differences should be adjusted. Here, the parties directly declined to agree at the time of signing the writing, by expressly postponing that feature to a later date. In brief, the minds of the parties did not meet on any specific proposition, and hence on primary principles there was no contract.

The Circuit Court was right in its conclusion and its decree must be affirmed.      AFFIRMED.

BEAN, BENSON and HARRIS, JJ., concur.